[Nos. 14667, 14870, 14871.  *En Banc.*  November 19, 1918.]

SPOKANE & INLAND EMPIRE RAILWAY COMPANY, YAKIMA
VALLEY TRANSPORTATION COMPANY, AND WASHINGTON
WATER POWER COMPANY, *Appellants,* v.
JOHN M. WILSON *et al., Industrial
Insurance Commissioners,
Respondents.*[1]

MASTER AND SERVANT (20-1)—LIABILITY FOR INJURY TO SERVANT—
WORKMEN'S COMPENSATION—ACT EXEMPTING INTERSTATE RAILWAYS—
CONSTRUCTION. Under the amendment (Laws 1917, p. 96, § 18; Rem.
Code, § 6604-18) providing that the workmen's compensation act shall
not apply to employees of railways doing interstate, foreign, and
intrastate commerce, and substituting therefor the liability imposed
by the Federal employers' liability act, it is immaterial whether an
injured employee was engaged in intrastate or interstate commerce,
if any portion of the railroad's business is interstate; it being the
intention to classify employers and render them liable under the
Federal act regardless of the nature of the work (TOLMAN and FUL-
LERTON, JJ., dissent).

Appeal from a judgment of the superior court for
Thurston county, Mitchell, J., entered November 20,
1917, in favor of the defendants, dismissing consoli-
dated actions to exclude plaintiffs from the require-
ments of the industrial insurance act, after a trial to
the court on the merits.  Reversed.

*Richards & Fontaine,* for appellant Yakima Valley
Transportation Company, cited: *State ex rel. Jarvis
v. Daggett,* 87 Wash. 253, 151 Pac. 648, L. R. A. 1916A
446; *State v. Bates & Rogers Construction Co.,* 91
Wash. 181, 157 Pac. 482; *New York Cent. R. Co. v.
Winfield,* 244 U. S. 147; *Erie R. Co. v. Winfield,* 244
U. S. 170; *Pederson v. Delaware, L. & W. R. Co.,* 229
U. S. 146, Ann. Cas. 1914C 153; *Colasurdo v. Central
R. Co.,* 180 Fed. 832.

[1]Reported in 176 Pac. 34.

*Post, Russell, Carey & Higgins,* for appellant Washington Water Power Company, contended, among other things, that complainant is engaged in interstate commerce. *Railroad Commission of Louisiana v. Texas & P. R. Co.,* 229 U. S. 336; *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U. S. 498; *Railroad Commission of Ohio v. Worthington,* 225 U. S. 101; *Texas & N. O. R. Co. v. Sabine Tram Co.,* 227 U. S. 111; *Atchison, T. & S. F. R. Co. v. Harold,* 241 U. S. 371; *Gibbons v. Ogden,* 9 Wheat. (22 U. S.) 1, 188; *West v. Kansas Natural Gas Co.,* 221 U. S. 229, 35 L. R. A. (N. S.) 1193; *Landon v. Public Utilities Commission of Kansas,* 242 Fed. 658, 684; *Hagerla v. Mississippi River Power Co.,* 202 Fed. 776, 785, 786.

*Graves, Kizer & Graves,* for appellant Spokane & Inland Empire Railway Company, contended, among other things, that the decisions between 1911 and 1917 render it extremely doubtful as to when a railroad employee is engaged in interstate commerce. *Delaware, L. & W. R. Co. v. Yurkonis,* 238 U. S. 439; *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556; *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177; *New York Cent. & H. R. Co. v. Carr,* 238 U. S. 260.

Power plant employees are engaged in interstate commerce. *Horton v. Oregon-Washington R. & Nav. Co.,* 72 Wash. 503, 130 Pac. 897, 47 L. R. A. (N. S.) 8; *Tacoma v. Nisqually Power Co.,* 57 Wash. 420, 107 Pac. 199; *State ex rel. Lyle Light, Power & Water Co. v. Superior Court,* 70 Wash. 486, 127 Pac. 104; *State ex rel. Weyerhaeuser Timber Co. v. Superior Court,* 71 Wash. 84, 127 Pac. 591.

While shop men are not. *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556; *Minneapolis & St. L. R. Co. v. Winters,* 242 U. S. 353, Ann. Cas. 1918B 54.

Trackmen are engaged in interstate commerce. *Pederson v. Delaware, L. & W. R. Co.,* 229 U. S. 146, Ann. Cas. 1914C 153.

The amendment would not exempt the persons engaged in those varying occupations, although they might be employees of a company which owned and operated a railroad. *Southern Pac. Co. v. Jensen,* 244 U. S. 205, Ann. Cas. 1917E 900.

*The Attorney General* and *John A. Homer, Assistant,* for respondents, contended, *inter alia,* that the decisions construing the Federal employers' liability act are more or less pertinent, first, by reason of the fact that the Federal act is made to apply to "common carriers by railroad" engaging in interstate commerce, while the amendment to the state act excludes "railroads" engaged in interstate commerce; and secondly, because of the evident intent of the legislature to extend the provisions of the state act to every hazardous work, but with an equally evident desire to avoid legislating with respect to matters within the exclusive jurisdiction of the Federal government. *Lehigh Valley R. Co. v. Barrow,* 244 U. S. 183; *Bay v. Merrill & Ring Logging Co.,* 243 U. S. 40; *McCluskey v. Marysville & N. R. Co.,* 243 U. S. 36; *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177; *Horton v. Oregon-Washington R. & Nav. Co.,* 72 Wash. 503, 130 Pac. 897, 47 L. R. A. (N. S.) 8; *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556; *Cousins v. Illinois Central R. Co.,* 126 Minn. 172, 148 N. W. 58; *Delaware, L. & W. R. Co. v. Yurkonis,* 238 U. S. 439; *New York Central R. Co. v. Winfield,* 244 U. S. 147, Ann. Cas. 1917D 1139. See, also, the following cases: *Southern Pac. Co. v. Jensen,* 244 U. S. 205, Ann. Cas. 1917E 900; *Illinois Central R. Co. v. Behrens,* 233 U. S. 473, Ann. Cas. 1914C 163; *Erie R. Co. v. Welsh,* 242 U. S. 303; *Minneapolis*

& St. L. R. Co. v. Winters, 242 U. S. 353, Ann. Cas. 1918B 54; New York Central R. Co. v. White, 243 U. S. 188, Ann. Cas. 1917D 629; Giovio v. New York Central R. Co., 176 App. Div. 230, 162 N. Y. Supp. 1026; Killes v. Great Northern R. Co., 93 Wash. 416, 161 Pac. 69.

The interstate commerce act does not apply to street railways. Omaha & C. B. St. R. Co. v. Interstate Commerce Commission, 230 U. S. 324, 46 L. R. A. (N. S.) 385; Front Street Cable R. Co. v. Johnson, 2 Wash. 112, 25 Pac. 1084, 11 L. R. A. 693.

The word "railroad" does not include street railways. Norfolk & Portsmouth Traction Co. v. Ellington's Adm'r, 108 Va. 245, 61 S. E. 779, 17 L. R. A. (N. S.) 117; Cedar Rapids & M. C. R. Co. v. Cedar Rapids, 106 Iowa 476, 76 N. W. 728; Funk v. St. Paul City R. Co., 61 Minn. 435, 63 N. W. 1099, 52 Am. St. 608, 29 L. R. A. 208; Lincoln Traction Co. v. Webb, 73 Neb. 136, 102 N. W. 258, 119 Am. St. 879; Daly v. Milwaukee Elec. R. & Light Co., 119 Wis. 398, 96 N. W. 832, 100 Am. St. 893; Lincoln Street R. Co. v. McClellan, 54 Neb. 672, 74 N. W. 1074, 69 Am. St. 736; Omaha Street R. Co. v. Boesen, 74 Neb. 764, 105 N. W. 303, 4 L. R. A. (N. S.) 122; Railroad Co. v. Board of Railroad Com'rs, 73 Kan. 168, 84 Pac. 755; State v. Cain, 69 Kan. 186, 76 Pac. 443; Manhattan Trust Co. v. Sioux City Cable R. Co., 68 Fed. 82; Massillon Bridge Co. v. Cambria Iron Co., 59 Ohio St. 179; Louisville & P. R. Co. v. Louisville City R. Co., 2 Duv. (63 Ky.) 175; O'Malley v. Board of Com'rs of Riley County, 86 Kan. 752, 121 Pac. 1108, Ann. Cas. 1913C 576; In re New York District R. Co., 107 N. Y. 42, 14 N. E. 187; Board of Railroad Com'rs v. Market Street R. Co., 132 Cal. 677, 64 Pac. 1065; Thompson-Houston Elec. Co. v. Simon, 20 Ore. 60, 25 Pac. 147, 23 Am. St. 86, 10 L. R. A. 251; Sams v. St. Louis & M. R. Co., 174 Mo. 53, 73 S. W. 686, 61 L. R. A. 475; State v.

*Duluth Gas & Water Co.,* 76 Minn. 96, 78 N. W. 1032, 57 L. R. A. 63; *Gyger v. Philadelphia City P. R. Co.,* 136 Pa. St. 96 (*Appeal of Montgomery,* 20 Atl. 399), 9 L. R. A. 369; *Riley v. Galveston City R. Co.,* 13 Tex. Civ. App. 247, 35 S. W. 826; *Sears v. Marshalltown St. R. Co.,* 65 Iowa 742, 23 N. W. 150; *Freiday v. Sioux City Rapid Transit Co.,* 92 Iowa 191, 60 N. W. 656, 26 L. R. A. 246.

The Federal employers' liability act does not apply to street railways, although extended to interurban lines running between two states. *Kiser v. Metropolitan St. R. Co.,* 188 Mo. 169, 175 S. W. 98; *Spokane & Inland Empire R. Co. v. Campbell,* 241 U. S. 497; *Washington R. & Elec. Co. v. Scala,* 244 U. S. 630.

Power plant employees are not engaged in interstate commerce. *Altoona v. Leary,* 254 Pa. 25, 98 Atl. 798; *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177; *Delaware, L. & W. R. Co. v. Yurkonis,* 238 U. S. 439.

The words "operation of railroads," in the act of 1917, does not have a meaning other than it had in other parts of the act, so as to include the operation of power plants. *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556; *State v. Chicago, M. & P. S. R. Co.,* 80 Wash. 435, 141 Pac. 897.

MAIN, C. J.—These three actions against the industrial insurance commission, where the appellants seek to be excluded from the operation of the workmen's compensation act, all call for the interpretation of the amendment to § 18 thereof (Rem. Code, § 6604-18), contained in Laws of 1917, page 96, which reads as follows:

"Inasmuch as it has proved impossible in the case of employees engaged in maintenance and operation of railways doing interstate, foreign and intrastate

commerce, and in maintenance and construction of their equipment, to separate and distinguish the connection of such employees with interstate or foreign commerce from their connection with intrastate commerce, and such employees have, in fact, received no compensation under this act, the provisions of this act shall not apply to work performed in the maintenance and operation of such railroads or performed in the maintenance or construction of their equipment, or to the employees engaged therein, but nothing herein shall be construed as excluding from the operation of this act railroad construction work, or the employees engaged thereon: *Provided, however,* That common carriers by railroad engaged in such interstate or foreign commerce and in intrastate commerce shall, in all cases where liability does not exist under the laws of the United States, be liable in damages to any person suffering injury while employed by such carrier, or in the case of the death of such employee to his surviving wife and child or children, and if no surviving wife or child or children, then to the parents, sisters, or minor brothers, residents of the United States at the time of such death and who were dependent upon such deceased for support, to the same extent and subject to the same limitations as the liability now existing, or hereafter created, by the laws of the United States governing recoveries by railroad employees injured while engaged in interstate commerce.''

I. The Spokane & Inland Empire Railway Company operates an electric system of railways consisting of street car lines in Spokane and suburban and interurban lines into Spokane, two of the interurban lines extending into the state of Idaho. The company also operates an electric power plant on the Spokane river. All of these operations are under one control and are conducted as a whole. The interurban railway lines constitute the greater portion of the company's business. The number of employees on the

interurban and street car lines cannot be segregated, since the street car lines are combined with suburban lines in so far as the operation of cars, the repair shops and the care of tracks are concerned. The power generated by the power department is used principally for railroad purposes, from fifteen per cent to twenty-five per cent being sold commercially. The power sold is what is known as "surplus" power, which is available only when the river is at its higher stages. There is no segregation of expenses in the power department between that required to generate the power used for railroad purposes and that sold commercially, nor is there any segregation possible with respect to the power used for the movement of interstate and intrastate traffic. The urban cars carry no interstate traffic, but interstate trains run and interstate traffic is carried over all portions of the street car lines.

II. The Washington Water Power Company operates an electric car system in and about the city of Spokane, which system consists of twenty routes, all of them except one being operated exclusively for the carrying of passengers in and about the city of Spokane. On one line, operating principally for the carriage of passengers wholly within this state, the cars carry mail coming from and destined to points outside of the state. In addition to the urban routes the company operates an electric interurban railway extending from Spokane to Cheney, with two branches from that point. The tracks of this line are wholly within the state. This interurban line is used, in addition to carrying intrastate passengers and freight, in carrying express, freight and mail, some of which is transported in continuous passage between points on the interurban line and points in other states, the

tracks being physically connected with the tracks of
the Northern Pacific Railway, the Great Northern
Railway, the Spokane & Inland Empire Railway, the
Oregon & Washington Railway and the Chicago, Mil-
waukee & St. Paul Railway, so that it is possible to
interchange cars between the interurban tracks and
the tracks of these connecting interstate carriers. The
tracks of the interurban line are also physically con-
nected with the plaintiff's urban tracks in the city of
Spokane, and cars operated in the interurban service
use many of the urban tracks within the city. The
company also operates electric power plants located
on the Spokane river, in the state of Idaho and at Spo-
kane, Long Lake and Little Falls, in the state of
Washington. The power generated is used in the
operation of the urban car system, in the operation of
the interurban lines, furnishing light to the city of
Spokane, and for supplying numerous cities and towns
in Washington and Idaho with power and light, and
for general commercial purposes. The entire busi-
ness is conducted under one management, and to sep-
arate and distinguish the employees engaged in inter-
state commerce from those engaged in intrastate com-
merce would be nearly impossible.

III. The Yakima Valley Transportation Company
operates an urban and interurban railroad system in
and about the city of Yakima. The tracks of the com-
pany are physically connected with the Oregon &
Washington and the Northern Pacific Railway tracks,
and receive from those interstate carriers freight in
car-load lots, ninety per cent of the freight handled
by the company being interstate business. One sys-
tem of tracks is used for both urban and interurban
service, and cars engaged in carrying city passengers
and transporting interstate passengers and cars trans-

porting freight, mail and express in interstate commerce, pass over the tracks alternately one with the other. Freight is received at all points on the company's line and through bills of lading are issued to all points in the United States and Canada. Freight is billed from points outside of the state to points on the company's lines and received and delivered at its stations on through bills of lading. The same employees are engaged in maintaining the tracks used in all service performed by the company, the car shops and car barns are used in both classes of service, the same men working on the equipment used in interstate and intrastate business. The executive officers and office employees perform services without regard to whether the business they are engaged upon is interstate or intrastate. The operators of the cars are engaged part of the time on one class and part of the time on the other class of service.

When the workmen's compensation act (Rem. Code, § 6604-1 *et seq.*) was passed in 1911, it was anticipated that there had been substituted for the common law liability of employers a sure and certain compensation for all railroad employees except those who come within the Federal employers' liability act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657-8665]). Under the operation of the law, however, it became apparent that, as stated in the amendment of 1917 (Laws 1917, p. 96, § 18), a great deal of confusion arose in cases of employees engaged upon railroads doing both interstate and intrastate business. From the statement of the business engaged in by the three companies involved in these suits, it is apparent that great numbers of employees are engaged in work so impossible of segregation as to whether it is at any given time inter-

state or intrastate that the question of whether they came within the state law or the Federal law is impossible of determination. In attempting to remedy this situation and, at the same time, not to remit employees to the uncertainty of the common law liability, the amendment of 1917 was enacted; and, as we view it, that act, instead of attempting to segregate employees into two classes—those engaged in interstate and those engaged in intrastate work—in effect, said that it matters not whether the employees are engaged in interstate or intrastate work so long as the company for which they were working was a railroad actually engaged to some extent in doing an interstate, foreign or intrastate commerce. In other words, the character of the business of the railroad company determines the status of the employees, and if a portion of the railroad company's business is interstate, the employees engaged in its maintenance and operation, or in the maintenance and construction of its equipment, should not come within the operation of the state law, but that all such employees could recover in the state courts, not under the common law liability, but under the liability imposed under the amendment, which is the same liability fixed by the United States in the Federal employers' liability act. To give this amendment any other construction would be to read something into it which it does not contain; and to attempt to construe it with reference to the proportion of the company's business which may be interstate and apply the amended act only to such companies whose interstate business bears a certain proportion to their entire business, is not only rewriting the amendment, but also perpetuating and increasing the confusion which the amendment recognized and sought to obviate. Under this interpretation of the

act, the employee is the beneficiary of a clear definition of his status; for, if his employer is·a railroad company a portion of whose business is interstate, he knows, by reason of that fact, that his remedy for an injury received is not compensation under the workmen's compensation act, but that he has the same protection in the state courts which the Federal act gives to employees of interstate railroad companies.

We see no merit in the contention that, because a railroad company is principally engaged in intrastate activity, its employees should receive the benefits of the workmen's compensation act. The certainty and uniformity which the original act sought to provide is furnished by the amendment, which, by classifying employers, makes certain to the employee his status and determines the law under which he will receive compensation. To interpret this amendment in any other way would, to our mind, lead to confusion worse confounded. In place of the uncertainty and practical impossibility of determining whether employees should be classified as being engaged in interstate and intrastate work, the amendment gives all the employees in maintenance and operation and maintenance and construction of equipment of a railroad actually doing an interstate business as a portion of its general railroad business, the benefit of the same rules of liability provided by the Federal government in cases against interstate carriers.

The action of the lower court in denying the relief sought was erroneous. A decree will be entered that appellants are not amenable to the jurisdiction of the industrial insurance commission, and restraining that commission from making any demand upon appellants for premiums under the workmen's compensation act

for its employees engaged in maintenance and operation or in maintenance and construction of equipment.

CHADWICK, HOLCOMB, MOUNT, PARKER, and MACKINTOSH, JJ., concur.

TOLMAN and FULLERTON, JJ., dissent.