## GREAT NORTHERN RY. CO. v. NELSON.
### No. 10841.

Circuit Court of Appeals, Eighth Circuit.
May 25, 1937.

J. H. Mulally, of St. Paul, Minn. (A. L. Janes, of St. Paul, Minn., on the brief), for appellant.

William H. DeParcq, of Minneapolis, Minn. (Robert J. McDonald, of Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

This is an action brought by appellee as plaintiff, against appellant, to recover damages on account of personal injuries under the provisions of the Employers' Liability Act of the State of Washington. There was a verdict for $9,122 in favor of the appellee, and from the judgment entered thereon this appeal has been taken. We shall refer to the parties as they were designated in the lower court.

At the time of receiving his injuries, plaintiff was employed by defendant as a carpenter's helper in a lumber yard at Hillyard, Wash. The lumber yard was one wherein defendant stored lumber and materials used in the maintenance and repair of various portions of its line of railway. Plaintiff was thoroughly familiar with this lumber yard and the working conditions therein, and had worked there frequently during the seven years preceding the accident. On October 29, 1935, he and two other employees, Clarkson and Fretwell, were repairing runways and platforms which were maintained in the yard to facilitate the handling of the timbers and lumber. They were taking out worn planks and replacing them with new ones. One main runway ran through the yard, from which other runways branched off. The first thirty or thirty-two feet of these branch runways inclined upward from the main runway. The planks used in the runways were ten inches wide, three inches thick, and varied in length from sixteen to eighteen feet. When dry these planks weighed from 250 to 300 pounds each. The day before the accident it had rained, and the night before the accident there had been a severe freezing, so that the planks all over the lumber yard were covered with ice. The ice was on both sides of the planks, rendering them quite slippery.

On the morning of the accident, but before it happened, plaintiff and his coemployees had taken two loads of planks and put them into a runway opposite the one where the accident happened. The planks on these two loads were of the same kind that were on the truck at the time of the accident and had been taken from the same pile, and the runway in which they were placed was the same as that on which the accident happened, and had the same incline. Three or four worn planks had been taken out of the runway on which the accident happened. These were taken from the inclined part of the runway. From the main runway to the crest of the incline of the branch runway, where the accident happened, the distance was about thirty feet, and the crest of the incline of this branch runway was about five feet above the ground beneath, but the ground beneath the crest was lower than the ground below the point where the runway started to ascend, so that the slope of the incline was actually two feet, eight inches, in twenty feet. Where the old planks were taken out of the runway there were joists beneath, two feet apart.

After removing the old planks, all three men went to get new planks. The planks had to be broken apart because they were frozen. Clarkson, who plaintiff says was the foreman of the job, threw the planks down to Fretwell and plaintiff, and they loaded them onto a two-wheel hand truck, which was about four and a half feet in length. Referring now to the movement connected with the accident, two of the planks, eighteen feet long, were first placed on the bottom of the truck, on top of which were placed two sixteen-foot planks, and on top of these two, and in the center of them, one sixteen-foot plank. The weight of these

planks rested on an iron in front of the truck and on the part of the truck between the handles. This iron on the front part of the truck was four or five inches higher than the body of the truck as it rested on the wheels and its two legs. The truck was loaded so as nearly to balance it, the load being a little heavier at the rear. As the planks were loaded, it was not possible to use the handles of the truck, but it was moved by taking hold of the planks and raising the rear end so that the legs of the truck were free from the floor, the weight then being on the wheels of the truck. It is difficult to give a word picture of the truck, but it was the ordinary hand truck customarily used in moving boxes, luggage, and such articles in and about railway stations and loading platforms. Perhaps it ought here be noted that there is no claim that this truck was defective, or that it was not a proper implement, tool, or appliance for the work being performed.

As loaded, the planks extended a long distance beyond the handles and also a long distance beyond the front iron portion of the truck. To move it, the employees raised the back end, thus raising the truck off its legs, and then pushed it forward. These three men pushed the loaded truck up the incline of the branch runway to the crest of the incline, from which point the platform continued on the level. Here the truck was brought to a standstill for the purpose of unloading the planks. In this position, the head end of the planks was up in the air a greater distance from the platform than the rear end of the planks. Plaintiff, pursuant to direction from Clarkson, went forward on the right side of the planks, while Clarkson and Fretwell remained at the rear end of the planks and held up the rear end so that the legs of the truck did not touch the platform. Plaintiff, in proceeding to the front end, walked over the space from which the old planks had been removed, and in doing so had to walk on the joists. While he was proceeding to the front end, and before he had reached the end of the planks, the men holding the rear end let it down without warning, whereupon these slippery planks slid toward the rear. Clarkson let go and jumped behind a pile of lumber. Fretwell also let go and stepped back from the truck. Clarkson and Fretwell tried to hold the planks, but could not because they were icy and got "too low down." Fretwell testified that "they were clear down on the boards." As plaintiff no-

ticed the planks coming up on the front end, some one called to him to: "Look out!" Then three planks fell on him, inflicting serious injuries.

At the close of the testimony, defendant moved for a directed verdict on the grounds: (1) That it appears conclusively from the evidence that the defendant is not guilty of any act or acts of negligence proximately resulting in plaintiff's damage; (2) that it appears conclusively from the evidence that whatever damage plaintiff suffered grew out of the risks and hazards which he assumed as part of his employment with the defendant. The motion was overruled, and the case went to the jury on instructions to which no exceptions were saved, and the jury returned a verdict as above noted.

The only issues presented on this appeal are predicated on the alleged error of the court in denying defendant's motion for a directed verdict. This necessitates a consideration of the sufficiency of the evidence.

So far as here material, the Employers' Liability Act of the State of Washington (Rem.Rev.Stat.Wash. § 7693) is as follows: "Provided, however, that common carriers by railroad engaged in such interstate or foreign commerce and in intrastate commerce shall, in all cases where liability does not exist under the laws of the United States, be liable in damages to any person suffering injury while employed by such carrier * * * to the same extent and subject to the same limitations as the liability now existing, or hereafter created, by the laws of the United States governing recoveries by railroad employes injured while engaged in interstate commerce."

To warrant recovery under this act, as under the Federal Employers' Liability Act (45 U.S.C.A. §§ 51–59), there must have been negligence causing or contributing to the injury. Spokane & I. E. Ry. Co. v. Wilson, 104 Wash. 171, 176 P. 34; Seaboard Air Line Ry. v. Horton, 233 U.S. 492, 34 S.Ct. 635, 58 L.Ed. 1062, L.R.A. 1915C, 1, Ann.Cas.1915B, 475; New York Cent. R. Co. v. Ambrose, 280 U.S. 486, 50 S.Ct. 198, 74 L.Ed. 562; Atchison, T. & S. F. Ry. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896; Atchison, T. & S. F. Ry. Co. v. Saxon, 284 U.S. 458, 52 S.Ct. 229, 76 L.Ed. 397; New Orleans & N. E. Ry. Co. v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167; Wheelock v. Frei-

wald (C.C.A.8) 66 F.(2d) 694; Chicago, B. & Q. R. Co. v. Kelley (C.C.A.8) 74 F.(2d) 80.

As the jury found the issues in favor of the plaintiff, we must assume that it decided all controverted questions of fact in his favor. We examine the record only for the purpose of determining whether there was substantial evidence to sustain the jury's verdict. In doing so, the testimony in favor of the plaintiff must be accepted as true, and he is also entitled to such reasonable favorable inferences as may fairly be drawn therefrom. Where the evidence so considered is such that reasonable men may reach different conclusions, the case is one for the jury. Chicago, M., St. P. & P. R. Co. v. Linehan (C.C.A.8) 66 F.(2d) 373; Chicago, B. & Q. R. Co. v. Kelley (C.C.A.8) 74 F.(2d) 80.

The evidence was without dispute that the planks were slippery; that as plaintiff passed from the rear of the planks as loaded on this hand truck, toward the front end of the planks, and before he had reached the head of the planks, without any warning, his coemployees let the rear end of the truck down so that the legs touched the platform, thus tilting the planks so that they started to slide backward. Fretwell, called as a witness for defendant, under direct examination by defendant's counsel, testified as follows:

"Q. After the truck came to a stop on the incline which end of the planks were down on the incline? A. Why, the rear end.

"Q. Is that the end that you had been pushing? A. That is the end that we had hold of, pushing, yes.

"Q. At any time was the front end of the planks down on the incline? A. No, sir.

"Q. You say that when the planks started to slide down towards you, you and Mr. Clarkson tried to stop them? A. We tried to hold them, yes sir.

"Q. Why could not you hold them? A. Because they were icy, and they got too low down; we could not hold them; they were clear down on the boards."

On cross-examination the witness testified among other things as follows:

"Q. You did not give any signal or say anything to him about leaving the truck down? A. Yes sir; when the planks started to slip I hollered, 'Look out!'

"Q. I know; but that was after you let the truck down? A. Not when we let the truck down, I said nothing, no sir.

"Q. When you let the truck down, so that the legs touched the platform, you did not say anything? A. No, sir.

"Q. And you say that when you let the truck down on its legs, the planks first started to slide backwards, toward you and Clarkson? A. Yes sir.

"Q. Well, you knew, if the planks would slide, they would slide that way? A. Certainly.

"Q. If you would have held the planks at the rear end without putting the truck down on its legs, the planks would not slide backwards then, would they? A. No sir, they would not.

"Q. You knew that too, didn't you? A. I probably did, yes sir."

In the circumstances here disclosed by the evidence, we think the jury may reasonably have believed that it was negligence in plaintiff's coemployees to let the rear end of this truck loaded with slippery planks down so that the legs touched the platform while plaintiff was passing along the side of the truck in such position that he would inevitably have been struck by the planks if they slid off on the right side of the truck as they did. We conclude that there was substantial evidence of negligence which was the proximate cause of plaintiff's injuries.

It is conceded that defendant was not entitled to invoke the fellow-servant rule. It is also conceded, and the court so instructed the jury, that contributory negligence was not a defense, but was a matter to be taken into consideration by the jury in determining the amount of damages recoverable. It need therefore be given no consideration here.

Under the Washington statute, as under the Federal Employers' Liability Act, assumption of risk was a defense, and it is therefore necessary to consider the contention urged by defendant that the plaintiff's injuries arose from an ordinary risk of his employment. This is an affirmative defense, the burden of proof to establish which was on the defendant. Davis v. Crane (C.C.A.8) 12 F.(2d) 355. Defendant contends that the cause of plaintiff's injuries was the sliding of the planks sideways, and that this was due to the icy condition of the planks, and that plaintiff had knowledge of such condition and that the danger arising there-

from was obvious. But there were two elements which manifestly contributed to plaintiff's injuries: One, the icy condition of the planks; and, the other, the act of his coemployees, who, with knowledge of this condition of the planks and with knowledge of plaintiff's perilous situation, let the rear end of the truck and planks down on the platform. This was contrary to the practice that had been followed, and was *without warning to plaintiff.* It was therefore not an ordinary risk of his employment. True, he assumed the ordinary hazards and risks arising from his employment, and also such extraordinary risks as were fully known to and appreciated by him. Risks which arise from the negligence of the employer, or those representing him, are not ordinary risks incident to the employment, but are extraordinary ones. The employee has the right to assume that his employer and those representing him, will perform their duty to exercise ordinary care and prudence to prevent his employee from being subjected to extraordinary risks and dangers. The risk arising from the icy condition of the planks was manifestly assumed by plaintiff, but whether the extraordinary risk arising from the negligent acts of his coemployees was assumed by him was, we think, in the circumstances of this case, a question to be determined by the jury. Reed v. Director General of Railroads, 258 U.S. 92, 42 S.Ct. 191, 66 L.Ed. 480; Chicago, M. & St. P. R. Co. v. Donovan (C.C.A.8) 160 F. 826; Davis v. Crane (C.C.A.8) 12 F.(2d) 355.

It was therefore not error to deny defendant's motion for a directed verdict, and the judgment appealed from is affirmed.