[No. 19109. Department Two. May 23, 1925.]

THERESA HILLIARD, *Personally and as Guardian of Florence J. Hilliard, Respondent,* v. EDWARD CLIFFORD, *as Director of the Department of Labor and Industries, et al., Appellants.*[1]

MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION ACT—SCOPE—RAILROAD EMPLOYEES IN INTERSTATE COMMERCE. A workman employed upon a contract to "improve the terminal yards" of an interstate railway, is engaged in work connected with interstate commerce, where the maintenance work was so far intermingled with railroad construction work as to make it impossible to segregate one from the other; so that his remedy for injuries sustained would be governed by the Federal law; and it is immaterial that he was the employee of an independent contractor holding a contract with the railroad company for making the improvements.

Appeal from a judgment of the superior court for King county, John S. Jurey, judge *pro tempore,* entered October 6, 1924, upon findings in favor of the plaintiff, on appeal from an order of the department of labor and industries rejecting a claim for compensation under the workmen's compensation law. Reversed.

[1]Reported in 236 Pac. 108.

*The Attorney General* and *M. H. Wight, Assistant,* for appellants.

*H. G. Rowland* and *Dix H. Rowland,* for respondent.

FULLERTON, J.—On April 20, 1922, the Great Northern Railway Company entered into a contract with Grant Smith & Company by which the latter company agreed to "improve the terminal yards" of the former company, located at Skykomish, in this state. By the terms of the contract, the work was to be performed according to plans and specifications furnished by the railway company, and for its performance the contracting company agreed to furnish all labor, tools, apparatus, material and equipment.

Without the plans and specifications, which from their complicated nature cannot be reproduced here, it is difficult to make clear the nature of the work performed. Speaking somewhat generally, the plans required a general remodeling of the facilities of the yard. In the performance of the work, the construction company both lengthened and widened the yard; it excavated at certain places and filled at others; it moved the main line track from the south side of the yard to the north side; it remodeled and lengthened the existing switching tracks and constructed four or more others, each approximately a mile in length; the round house had been enlarged, and to make the addition available it changed the position of the turntable used in connection therewith, lengthened the existing tracks leading to it, and constructed new tracks to make the additional part available; it constructed a new bridge to take the place of an old one on the line of the railway at the west end of the yard and filled the approaches leading thereto; remodeled the "Y" located at the yard by enlarging it; and it made many other more minor changes.

The railway company is a common carrier, engaged in interstate and intrastate commerce. The yard in question had been in use by it for its purpose as such carrier as a divisional and terminal point for some six years prior to the letting of the contract, and the remodeling was necessary because the facilities of the yard had become inadequate to accommodate its commerce. The yard was used by the railway company during all the time the work of remodeling was being performed; indeed, it was one of the stipulations of the contract that the work should be so conducted as not to interfere with the movement of the trains carrying the traffic of the company.

The contracting company had in its employ while in the prosecution of the work one Claude W. Hilliard. Hilliard was killed while working in connection with a steam shovel used in excavation work. He left a widow and minor daughter, then residents of the state of Illinois, who were dependent upon him for support. The widow, acting for herself and daughter, presented a claim for compensation to the department of labor and industries, under the workmen's compensation act. The claim was disallowed by the department, and the claimant thereupon instituted the present proceedings in the superior court of King county to review the order of the department. The court at the hearing reversed the order and directed that an allowance be made in accordance with the provisions of the workmen's compensation act. From this order the department appeals.

The provision of the workmen's compensation act applicable to the controversy is found at § 7693, Rem. Comp. Stat., and reads as follows:

"§ 7693. Inasmuch as it has proved impossible in the case of employees engaged in maintenance and operation of railways doing interstate, foreign and intra-

state commerce, and in maintenance and construction of their equipment, to separate and distinguish the connection of such employees with interstate or foreign commerce from their connection with intrastate commerce, and such employees have, in fact, received no compensation under this act, the provisions of this act shall not apply to work performed in the maintenance and operation of such railroads or performed in the maintenance or construction of their equipment, or to the employees engaged therein, but nothing herein shall be construed as excluding from the operation of this act railroad construction work, or the employees engaged thereon; Provided, however, that common carriers by railroad engaged in such interstate or foreign commerce and in intrastate commerce shall, in all cases where liability does not exist under the laws of the United States, be liable in damages to any person suffering injury while employed by such carrier, or in case of the death of such employee to his surviving wife and child, or children, and if no surviving wife and child or children, then to the parents, sisters, or minor brothers, residents of the United States at the time of such death, and who were dependent upon such deceased for support, to the same extent and subject to the same limitations as the liability now existing, or hereafter created, by the laws of the United States governing recoveries by railroad employees injured while engaged in interstate commerce: Provided further, however, that if any interstate common carrier by railroad shall also be engaged in one or more intrastate enterprises or industries (including street railways and power plants) other than its railroad, the foregoing provisions of this section shall not exclude from the operation of the other sections of this act or bring under the foregoing proviso of this section any extrahazardous work of such other enterprise or industry, the pay-roll of which may be clearly separable and distinguishable from the pay-roll of the maintenance or operation of such railroad, or the maintenance or construction of its equipment.''

It was the opinion of the department of labor and industries that the work described was either main-

tenance work within the meaning of the statute, or was maintenance work so far intermingled with railroad construction work as to make it impossible to segregate the one from the other, and it drew the conclusion therefrom that the work was, in either event, without the provisions of the statute. The trial court, on the other hand, held the work to be railroad construction work, and hence within the statute.

The question, which of these discordant views represent the applicable rule, is not free from difficulty. It is controlled by the decisions of the highest Federal court. That court has always with jealous care guarded against encroachment by state legislatures upon the domain of interstate commerce. With reference to railroads engaged in interstate commerce, it has held that the Congress of the United States, by the enactment of the employer's liability act, has manifested its will to cover the entire field relating to compensation of employees for injuries suffered while engaged in such commerce, and that the states are without power to add to, abridge or supplement the act by legislation; and this whether the legislation be in form direct or in form that commonly known as workmen's compensation acts. *In re Second Employers' Liability Cases*, 223 U. S. 1; *New York Central R. Co. v. Winfield*, 244 U. S. 147; *Erie R. Co. v. Winfield*, 244 U. S. 170; *New York Central & H. R. R. Co. v. Tonsellito*, 244 U. S. 360; *New Orleans & N. E. R. Co. v. Harris*, 247 U. S. 367; *Pennsylvania R. Co. v. Public Service Comm.*, 250 U. S. 566; *Southern Pac. Co. v. Industrial Accident Comm.*, 251 U. S. 259; *Philadelphia & Reading R. Co. v. Hancock*, 253 U. S. 284; *Pryor v. Williams*, 254 U. S. 43; *Philadelphia & Reading R. Co. v. Polk*, 256 U. S. 332; *Baltimore & O. S. W. R. v. Burtch*, 263 U. S. 540.

The court has applied the rule to cases where the work in which the injured employee was engaged involved an intermingling of both interstate and intrastate commerce, holding that in such cases the act of Congress was exclusively controlling. Thus in *Northern Pac. R. Co. v. State ex rel. Atkinson,* 222 U. S. 370, this language was used:

"The train, although moving from one point to another in the state of Washington, was hauling merchandise from points outside of the State destined to points within the State and from points within the State to points in British Columbia, . . . This transportation was interstate commerce, and the train was an interstate train, despite the fact that it may also have been carrying some local freight. In view of the unity and indivisibility of the service of the train crew and the paramount character of the authority of Congress to regulate commerce, the act of Congress was exclusively controlling."

So in *Philadelphia & Reading R. Co. v. Polk,* 256 U. S. 332, it is said:

"Besides, we cannot accede to the view that there is a presumption that duties performed on a train constituted of interstate and intrastate commerce were performed in the latter commerce. The presumption, indeed, might be the other way. It is to be remembered that it is the declaration of the cases that if there is an element of interstate commerce in a traffic or employment it determines the remedy of the employee. *In re Second Employers' Liability Cases,* 223 U. S. 1; *New York Central R. Co. v. Winfield,* 244 U. S. 147."

See, also, *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146.

The general rule by which it is to be determined whether an employee was, at the time of his injury, engaged in interstate commerce, and his employer exempt from the operation of the state laws, has been thus stated:

"Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see *Swift & Co. v. United States,* 196 U. S. 375, 398), and that the true test of employment in such commerce in the sense intended is, was the employe at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556.

"In *Pedersen v. Delaware, Lackawanna & Western R. Co.,* 229 U. S. 146, it is stated that a guide to a decision of such a case as we have here may be found in the questions: Was the work being done independently of the interstate commerce in which the company was engaged or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned or was it in the nature of a duty resting upon the carrier? And in other cases it is said, in substance, that in such inquiries may be found the true test of employment in such commerce in the sense intended by the act. *Shanks v. Delaware, Lackawanna & Western R. R. Co.,* 239 U. S. 556, 558; *New York Central R. R. Co. v. White,* 243 U. S. 188, 192. It is also settled that the doing of work which has for its immediate purpose the furthering of the conduct of interstate commerce constitutes an employment in such commerce within the meaning of the act. *New York Central &c. R. R. Co. v. Carr,* 238 U. S. 260; *Louisville & Nashville R. R. Co. v. Parker,* 242 U. S. 13; *Pecos & Northern Texas Ry. Co. v. Rosenbloom,* 240 U. S. 439; *Southern Ry. Co. v. Puckett,* 244 U. S. 571, 573." *Kinzell v. Chicago, M. & St. P. R. Co.,* 250 U. S. 130.

"Generally, when applicability of the Federal Employers' Liability Act is uncertain, the character of the employment, in relation to commerce, may be adequately tested by inquiring whether, at the time of the injury, the employee was engaged in work so closely connected with interstate transportation as practically

to be a part of it. *Pedersen v. Delaware, Lackawanna & Western R. R. Co.*, 229 U. S. 146, 151; *Shanks v. Delaware, Lackawanna & Western R. R. Co.*, 239 U. S. 556, 558; *New York Central R. R. Co. v. Porter*, 249 U. S. 168; *Kinzell v. Chicago, Milwaukee & St. Paul Ry. Co.*, 250 U. S. 130, 133." *Southern Pac. Co. v. Industrial Accident Comm.*, 251 U. S. 259.

The cases wherein the court has pointed out what acts of an employee of a railroad company engaged in interstate commerce are within the terms of the Federal employers' liability act and what are without its terms, we shall not collect, as none has been called to our attention which in its facts very closely parallels the facts of the case before us. It is sufficient to say that the curious will find many such instances in the cases cited, and more in the cases to which the cited cases refer.

The Federal cases, as we have said, are authoritative on the question here presented. While our workmen's compensation act differs in the method of its administration from the similar acts which the court was considering in the cited cases, in the principle involved it is the same. The fund from which the officer having its administration in charge meets the obligations arising under it is collected by assessments upon employers. When the employer is a railroad company engaged in both interstate and intrastate commerce, it is always open to it to inquire, when an assessment is sought to be charged against it, whether the work in which it is engaged is of an interstate or intrastate nature, and on this question, under the rule of the Federal constitution applicable to interstate commerce, it is entitled to the adjudication of the Federal courts. The question is thus always one of importance to the administrative board. By a mistaken deduction it may bind itself for an obligation for which it has no fund

to meet. Nor is the standard by which it must determine its rights and liabilities at all certain. Indeed, the standard is extremely tenuous and uncertain, as an examination of the Federal cases cited will show. It depends upon the application of facts to law in instances where the facts present different aspects to different minds. The provision of the statute which we have quoted is an amendment to the compensation act enacted by the legislature in the year 1919. It is in itself a confession that its more restrictive and definite rules on the subject had been ineffective in their purposes. Plainly, it was meant thereby to vest in the administrative board a larger and wider discretion than it theretofore possessed; and this being the purpose of the statute, the courts should not override its conclusions unless, it can clearly see manifest error therein.

Turning to the facts presented, it is at once apparent, we think, that much of the work performed for the railway company, if it had been performed by itself, would have been regarded as maintenance and repair work. There was much work in the nature of new construction, but this was not separated from the maintenance work, and from the nature of the work could not be separated therefrom. There was thus an intermingling of work, a part of which was in aid of interstate commerce and a part not so, and the rule being that "if there is an element of interstate commerce in a traffic or employment it determines the remedy of the employee" (*Philadelphia & Reading R. Co. v. Polk,* 256 U. S. 332), it must follow that the workman killed was without the pale of the workmen's compensation act. The work would seem to be without the pale of the act for another reason. Manifestly, the doing of the work had "for its immediate purpose the furthering of the conduct of interstate commerce"

on the part of the railroad company, and is thus within the rule of *Kinzell v. Chicago, M. & St. P. R. Co., supra.*

The fact that the work was done by contract does not affect the situation. The act applies to employees engaged in the particular work whether employed by the railroad company direct or by an independent contractor. *Luby v. Industrial Ins. Comm.*, 112 Wash. 153, 191 Pac. 855. Our own cases we need not review. None of them is contrary to the rule we find to be controlling here.

The judgment appealed from is reversed, and the cause remanded with instructions to affirm the order of the department of labor and industries.

MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.
TOLMAN, C. J., dissents.