[No. 22640. Department Two. January 26, 1931.]

MATILDA KIDDER, *as Administratrix, Respondent,* v. MARYSVILLE & ARLINGTON RAILWAY COMPANY *et al., Appellants.*[1]

[1]Reported in 295 Pac. 162, 300 Pac. 170.

472

*J. A. Coleman* and *Robert Mulvihill*, for appellants.
*Joseph H. Smith* and *Louis A. Merrick,* for respondent.

BEALS, J.—Defendants are corporations, and have for several years operated a logging railroad in Snohomish county, for the purpose of hauling logs from their camp, about eight miles northeast of the city of Arlington, to tidewater, near Marysville. The late John F. Kidder was, for approximately fifteen years, in defendants' employ as brakeman, working upon this logging railroad. March 24, 1927, Mr. Kidder, while riding on a logging train in the course of his employment, was killed in an accident resulting from the falling down of a brake beam on one of the logging

trucks, which, catching in the frog of a switch, threw several of the trucks from the track, Mr. Kidder having been caught beneath one of them. This action was instituted by Matilda Kidder, his widow, as administratrix of his estate, for the purpose of recovering damages occasioned by her husband's death. From a judgment in favor of plaintiff, defendants appeal.

■ Several questions are presented by appellants' assignments of error, but we find it necessary to discuss only one of them. Respondent, in her amended complaint upon which the action was tried, alleged that appellants were operating the railway above mentioned, and were common carriers "engaged in the transaction of interstate commerce." Appellants admitted their corporate identity, that they were operating the logging railroad, and that Mr. Kidder had been in their employ, but denied that they were common carriers or engaged in any business which constituted interstate commerce. In addition to their denials, appellants pleaded several affirmative defenses, only one of which need be mentioned.

Appellants pleaded affirmatively that they were operating a logging railroad within Snohomish county; that the railroad had been classified by the department of labor and industries of the state of Washington as being an intrastate railway solely, not engaged in any particular in interstate commerce; and that appellants had been required by the department of labor and industries of the state of Washington to pay premiums upon their payroll, which premiums appellants had paid.

The affirmative allegations contained in appellants' answer above referred to were denied by respondent upon information and belief. It is not disputed by respondent that appellants did, in fact, pay, upon demand by the department of labor and industries of

the state of Washington, premiums upon their payroll. Respondent contends that appellants were engaged in interstate commerce, and that, therefore, she may maintain this action, and is not required to accept the compensation provided by the statute of this state known as the Workmen's Compensation Act. Appellants deny that they were engaged in interstate commerce, and contend that respondent cannot maintain this action, but, under the facts and the law, is relegated to her claim for compensation under the state statute.

We are satisfied that, in so far as appellants used their railroad for transporting their own logs to tidewater, they were not engaged in interstate commerce, but were doing purely an intrastate business. *McCluskey v. Marysville & Northern R. Co.*, 243 U. S. 36; *State ex rel. Chicago, Milwaukee, St. Paul & Pac. R. Co. v. Dept. of Public Works*, 149 Wash. 129, 270 Pac. 300. It appears, however, from the record, that appellants, from time to time, in connection with the operation of their railway as used in the prosecution of their own business, hauled, for two mill companies whose plants adjoined their railroad right of way, cars loaded with lumber and other mill products, most of which cars were intended for interstate shipment. Appellants hauled these cars at a flat rate of sixteen dollars per car to a derail or switch which was connected with their own track, upon which they deposited the cars, which were subsequently picked up by a railroad doing admittedly an interstate business. No bills of lading were issued by appellants for these cars, which were hauled over appellants' railway on oral order, without any regard to their ultimate destination, whether intrastate or interstate.

At appropriate stages in the proceedings, appellants moved the court for judgment in their favor, upon the

ground that the evidence failed to show that respondent was entitled to maintain this action under the Federal law. These motions were denied by the trial court, which submitted to the jury the question of whether or not appellants were, in fact, engaged in interstate commerce. If the testimony, in fact and in law, showed any conflict upon this question, and if the question were a proper one to be considered by the jury, then it may be assumed that this question was properly submitted. As we view the case, however, the issue was, in fact, narrower, the question to be determined being whether or not, at the time of the accident, Mr. Kidder was himself engaged in interstate commerce. If he was, then respondent can maintain this action; if he was not, then appellants' motion for judgment in their favor, as matter of law, should have been granted.

Under the authorities, it was not enough for respondent to show that appellants did, from time to time, haul some cars which might be classified as being used in interstate traffic. The burden rested upon respondent to show that, at the time of the accident, her intestate was engaged in interstate commerce. It was not sufficient for respondent to show that appellants, in carrying on their transportation business, engaged occasionally in interstate commerce, and under the record, as we view it, whether or not they were from time to time so engaged, is immaterial. Respondent failed to show that, at the time of the accident, there was any car attached to the train or forming a part thereof, other than logging trucks owned by appellants and used by them in connection with their logging operations. Indeed, it clearly appears from the record that the train was solely made up of appellants' engine, caboose and logging trucks. The train was proceeding from tidewater, after unloading logs,

back towards the logging camp, and contained no car, loaded or empty, belonging to any person other than appellants, or which was intended at that time to be used by any other person.

The supreme court of the United States, in the case of *Illinois Central R. Co. v. Behrens,* 233 U. S. 473, 58 L. Ed. 1051, held that a fireman, who came to his death while at his post of duty on his engine, which was engaged in switching cars from one point to another within the city of New Orleans, was not, at the time of his death, engaged in interstate commerce, and that his personal representative had no right of action against the railroad company for alleged negligence, which resulted in the collision occasioning the death. The railroad for whom the fireman had been working was engaged in both intrastate and interstate commerce, but it appeared that, at the time of the accident, the fireman was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. The court quoted from its own decision in the case of *Pederson v. Delaware, L. & W. R. Co.,* 229 U. S. 146, the following:

" 'There can be no doubt that a right of recovery thereunder [referring to the act of Congress of April 22, 1908, making railroads while engaged in interstate commerce liable in damages to any person suffering injury while employed by the carrier in such commerce] arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employee is employed by the carrier in such commerce.' . . . 'The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?' "

It was held that the mere fact that it was anticipated that the fireman would, upon the completion of the task upon which he was engaged at the time of his injury, enter upon other work, to-wit, switching cars

which were, at the time, being used in interstate commerce, was immaterial, and that as, at the time of the accident, the deceased was engaged in intrastate commerce only, no liability existed against the employer under the Federal law.

In the case of *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556, it was held that an employee of a railroad company which was engaged in both intrastate and interstate transportation, who was working in a machine shop maintained for repairing locomotives, was not engaged in interstate commerce while taking down and putting up fixtures in such machine shop, and could not maintain an action against the railroad company for injuries suffered while so engaged.

It was held in the case of *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177, that an employee of a railroad, engaged in switching coal belonging to the carrier from a storage track to the coal shed, where it was to be placed in bunkers and supplied as needed to the carrier's locomotives which were engaged indiscriminately in intrastate and interstate traffic, was not engaged in interstate commerce. The court applied the rule as laid down in the case of *Shanks v. Delaware L. & W. R. Co., supra,* and cases there cited, to the effect that:

". . . the true test of employment in such commerce [interstate] in the sense intended is, Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?"

The court held that there was no such close or direct relation to interstate transportation, in the taking of the coal to the bunkers, as would render the plaintiff engaged in interstate commerce, and that he, therefore, could maintain no action against the

carrier, as the Federal Employers' Liability Act did not apply.

In its opinion in the case of *Erie R. Co. v. Welsh*, 242 U. S. 303, the supreme court reaffirmed the doctrine that, under the Employers' Liability Act "the true test is the nature of the work being done at the time of the injury," the mere expectation that plaintiff might presently be called upon to perform a task in interstate commerce, being insufficient to bring the case within the act, citing *Illinois Central R. Co. v. Behrens, supra.*

The rule laid down by the supreme court of the United States in the foregoing cases has been followed and applied by inferior United States courts in the following instances: *Boyle v. Pennsylvania R. Co.*, 221 Fed. 453, affirmed by the Circuit Court of Appeals, *Boyle v. Pennsylvania R. Co.*, 228 Fed. 266; *Pryor v. Bishop*, 234 Fed. 9; *Missouri Pac. R. Co. v. Mette*, 261 Fed. 755; *St. Louis-San Francisco R. Co. v. Mills*, 3 Fed. (2d) 882; *Onley v. Lehigh Valley R. Co.*, 36 Fed. (2d) 705.

The application of the Federal Employers' Liability Act to a situation somewhat similar to that here presented, was first considered by this court in the case of *Horton v. Oregon-Washington R. & N. Co.*, 72 Wash. 503, 130 Pac. 897, 47 L. R. A. (N. S.) 8, in which it was held that an operator of a pumping plant, installed for the purpose of supplying water to locomotives used both in interstate and intrastate commerce, was within the purview of the Federal statute.

In the later case of *Morrison v. Chicago, Milwaukee, & St. Paul R. Co.*, 103 Wash. 650, 175 Pac. 325, it was held that a foreman in charge of a construction gang was not employed in interstate commerce while he was engaged in unloading concrete tiling, to be stored for future use in replacing wooden culverts. The

previous case of *Horton v. Oregon-Washington R. &
N. Co., supra,* was discussed, as were many other fed-
eral and state cases. There could be, of course, no
question but what the defendant railroad was engaged
in interstate commerce. That being an admitted fact,
the question to be determined was whether or not the
plaintiff's intestate was, at the time he was killed, en-
gaged in interstate commerce. After a thorough re-
view of the authorities, this court held that he was not
so engaged, and reversed a judgment entered by the
superior court upon the verdict of a jury in plaintiff's
favor. The supreme court of the United States denied
a petition for a writ of certiorari (249 U. S. 611).

The question was, also, considered in the later case
of *Adams v. Hines,* 114 Wash. 672, 196 Pac. 19, and a
judgment in favor of the employee was reversed, on
the ground that he was not, at the time he was in-
jured, engaged in interstate commerce.

In the case of *Prink v. Longview, Portland & North-
ern R. Co.,* 153 Wash. 300, 279 Pac. 1115, it was held
that an employee of a railroad, engaged in building
a dike, was working on "maintenance" and not "rail-
road construction work," and, therefore, came within
the provisions of the Federal statute. The facts in
the case last cited were so different from those in
the case at bar that the opinion is not here in point.

The authorities upon this question are collected and
discussed in L. R. A. 1915C 56; 10 A. L. R. 1184, and
65 A. L. R. 613.

In support of her contention that the Federal Em-
ployers' Liability Act applies to the situation here
presented, respondent cites several authorities which
we shall now discuss.

The supreme court of the United States, in the
case of *Railroad Commission of Ohio v. Worthington,*
225 U. S. 101, held that a rate fixed by the Ohio Rail-

road Commission for transportation of coal from different places in Ohio to "on board" ships at the port of Huron, Ohio, intended for shipment to some place without the state, the coal being billed from the place of loading to the shipper's own order at Huron, was a rate affecting interstate commerce, and consequently void.

The same court, in the case of *Texas & New Orleans R. Co. v. Sabine Tram Co.*, 227 U. S. 111, held that merchandise intended for shipment beyond the state line acquired the character of foreign commerce as soon as the same actually started for its destination, and that, while the transportation should be continuous, it need not necessarily be by the initial carrier.

In the case of *Hughes Bros. Timber Co. v. Minnesota*, 272 U. S. 469, the supreme court, speaking through Mr. Chief Justice Taft, held that a shipment of logs, initiating in Minnesota and proceeding to a terminus within the state of Michigan, constituted interstate commerce from the time the logs started on their journey.

The foregoing authorities would be pertinent if, at the time Mr. Kidder was killed, there had been, as part of the train upon which he was performing his duties as brakeman, a car containing merchandise destined for interstate commerce. The only question presented here is whether or not, at the time of the accident, Mr. Kidder came within the provisions of the Federal Employers' Liability Act.

Counsel for respondent cites other authorities from different inferior Federal courts, but none of them touch upon the question here presented. Of these authorities, the case of *United States v. Colorado & N. W. R. Co.*, 157 Fed. 321, is typical. In that case, the circuit court of appeals for the Eighth Circuit, speaking through Judge Sanborn, held, generally

speaking, that every part of every transportation of articles of commerce, in a continuous passage from a commencement in one state to a definite destination in another, constitutes interstate commerce, and that every carrier, transporting merchandise over any portion of its route is engaged in interstate commerce.

The question at issue here is, of course, to be determined under the Federal statute. *Flanders v. Georgia S. & F. R. Co.,* 68 Fla. 479, 67 South. 68. In our opinion, the authorities relied upon by respondent are not pertinent to the question here presented, which is controlled by the principle laid down in the case of *Illinois Central R. Co. v. Behrens, supra,* and cases in which the rule therein laid down was followed. Applying this doctrine to the evidence contained in the record before us, we hold that there was no evidence upon which the jury could base a finding to the effect that respondent's intestate was, at the time of his death, engaged in interstate commerce, or which would justify the court in concluding that such was the case (it being, for the purposes of this opinion, immaterial whether that question should have been submitted to the jury or determined by the court from the evidence, as matter of law. *Graber v. Duluth, S. S. & A. R. Co.,* 159 Wis. 414, 150 N. W. 489; *Oberlin v. Oregon-Washington R. & N. Co.,* 71 Ore. 177, 142 Pac. 554; *Pelton v. Illinois Central R. Co.,* 171 Iowa 91, 150 N. W. 236), and that, consequently, appellants' motion for judgment in their favor should have been granted.

The judgment appealed from is reversed, with directions to the trial court to enter judgment in appellants' favor, dismissing the action.

FULLERTON, MAIN, MITCHELL, and HOLCOMB, JJ., concur.

ON REHEARING

[*En Banc.* June 16, 1931.]

BEALS, J.—After the filing of the Departmental opinion in this case, the *Attorney General,* as *amicus curiae,* on behalf of the department of labor and industries, filed a petition for rehearing, suggesting that a pertinent statute of the state of Washington should be considered by the court in determining the issues presented, and praying that the case be reheard by the court sitting *En Banc.* Respondent also filed her petition praying for a rehearing, and the petitions having been granted, the cause was reargued to the entire court.

Section 19, chapter 28, p. 96, Session Laws of 1917 (Rem. Comp. Stat., § 7693), reads as follows:

"Inasmuch as it has proved impossible in the case of employees engaged in maintenance and operation of railways doing interstate, foreign and intrastate commerce, and in maintenance and construction of their equipment, to separate and distinguish the connection of such employees with interstate or foreign commerce from their connection with intrastate commerce, and such employees have, in fact, received no compensation under this act, the provisions of this act shall not apply to work performed in the maintenance and operation of such railroads or performed in the maintenance or construction of their equipment, or to the employees engaged therein, but nothing herein shall be construed as excluding from the operation of this act railroad construction work, or the employees engaged thereon: *Provided, however,* That common carriers by railroad engaged in such interstate or foreign commerce and in intrastate commerce shall, in all cases where liability does not exist under the laws of the United States, be liable in damages to any person suffering injury while employed by such carrier, or in case of the death of such employee to his surviving wife and child, or children, and if no

surviving wife and child or children, then to the parents, sisters, or minor brothers, residents of the United States at the time of such death and who were dependent upon such deceased for support, to the same extent and subject to the same limitations as the liability now existing, or hereafter created, by the laws of the United States governing recoveries by railroad employees injured while engaged in interstate commerce.''

By chapter 84, p. 98, Laws Ex. Sess. 1925 (Rem. 1927 Sup., § 7693), the foregoing act was amended so as to limit its application to the ''employees of *common carriers* by railroad, engaged in maintenance and operation of railways doing interstate, foreign and intrastate commerce,'' etc., the effect of the amendment being to limit the application of the statute to the employees of such railroads as are common carriers.

Respondent based her claim in the court below and in the first argument before this court solely upon the ground that appellants, at the time of the accident which resulted in the death of her husband, were engaged in interstate commerce, and that therefore the cause was within the provisions of the Federal employers' liability act, and that that statute alone was applicable, every possible remedy under the state laws being excluded. Respondent's position up to the time of the filing of her petition for rehearing is clearly stated in her brief as follows:

''The appellants seem to be laboring under the opinion that the respondent in this case had a choice of two rights, either of which she might pursue, but, as we have endeavored to state heretofore, it is our contention and our theory that she never had but one right, that if the appellants were engaged in interstate commerce, then her cause of action existed solely by reason of the Federal Employers' Liability Act, and gave rise to no right under the Workmen's Compensa-

tion Act, or any state statute, either in accord or to the contrary.''

It appears beyond question from the evidence introduced at the trial—there being no evidence to the contrary—that, even though appellants occasionally hauled carloads of lumber which later became interstate shipments, respondent's husband, at the time of the accident which resulted in his death, was not engaged in work which was in any way connected with hauling any such freight, nor was he then participating to even the least extent in interstate commerce. This court, therefore, held, in harmony with abundant authority, both Federal and state, that under the record before us, respondent was not entitled to maintain her action or recover judgment under the Federal statute. On this point the Department opinion was right, and the same is hereby approved. That opinion, however, in view of the state statute now brought to our attention, does not dispose of the case, and a further examination of the facts and the law applicable thereto is necessary.

Under the section of the workmen's compensation act above quoted, and the amendment thereto, if a common carrier by railroad is engaged in both interstate and intrastate business, its employees engaged in intrastate business do not come under the provisions of the act providing for compensation; but there is thereby created as to them a statutory right of action practically identical with that which the Federal act provides for employees of railroads engaged in interstate commerce. *Spokane & Inland Empire Ry. Co. v. Wilson,* 104 Wash. 171, 176 Pac. 34. The operations of the logging railroad with which we are here concerned were confined to Snohomish county. Under the evidence contained in the record now before us, a trier

of the facts might find, in regard to the nature of the railroad's business, (1) that the railroad was a private intrastate carrier *(State ex rel. Silver Lake R. & L. Co. v. Public Service Commission,* 117 Wash. 453, 201 Pac. 765, 203 Pac. 3); (2) that it was a common carrier engaged in intrastate business only; or (3) that it was a common carrier engaged in both intrastate and interstate business. It is evident that reasonable minds might differ on the facts as to the proper classification within which the railroad should be placed.

It is not denied that the department of labor and industries, long prior to the accident which resulted in Mr. Kidder's death, determined that the logging railroad for which Mr. Kidder was working was within the purview of the workmen's compensation act, and therefore under the jurisdiction of the department. Appellants contend that respondent is estopped from maintaining this action because she submitted her claim for compensation under the workmen's compensation act to the department of labor and industries; and the department having found in favor of respondent upon her claim for compensation, she then elected to accept from the state the award made in her favor by the department under the appropriate provisions of the workmen's compensation act. In other words, appellants contend that respondent requested the department to make a finding that the logging railroad was a private carrier, and that when the department made such a finding in respondent's favor, that finding is conclusive upon respondent, and she cannot now claim that the railroad was a common carrier and maintain this action under chapter 84, Laws Ex. Sess. 1925, above referred to.

It appears, as above stated, that many years ago the logging railroad in question was classified by the

proper state officers charged with the administration of the workmen's compensation act as coming within the provisions of the act, so that its employees, in case of injury, were considered to be entitled to compensation under the statute, and appellants were, under the act, assessed from time to time the statutory percentage upon their payrolls.

Respondent, soon after her husband's death, and, as it appears, acting under the advice of counsel, presented to the industrial insurance division of the department of labor and industries her claim for compensation for the death of her husband. This claim was by the department considered and allowed, the department finding that Mr. Kidder came to his death

". . . in the course of employment within the jurisdiction of the division of industrial insurance on or about the 24th day of March, 1927; that, at the time of the injury, as alleged, the workman was engaged in work within the jurisdiction of the division of industrial insurance,"

and respondent was awarded the sum of $5,911.75 (payable in monthly installments of $35), and $150 for funeral expenses. This latter award was paid and accepted by respondent, and the monthly payments were accepted by her from June, 1927, until a few days before the trial of this action, which took place during the month of October, 1929.

Respondent, after her husband's death, had available to her a choice between several remedies. She might have sued appellants, as she did, claiming that she was entitled to recover under the Federal statute; or she might have sued them under the state statute above referred to; or she might have claimed, as she did, an allowance under the workmen's compensation act. Of course, the right that was actually available to respondent depended not upon her choice, but upon

the facts, and appellants claim that the successful exercise by respondent of her right to claim under the compensatory provisions of the workmen's compensation act precludes her from maintaining an action against appellants, either under the Federal or state law.

Respondent, in her brief, maintaining the position which she has assumed throughout this case that her cause of action comes within the purview of the Federal act, argues that her right to any recovery depends upon the establishment of the fact that the logging railroad was engaged in interstate commerce; and that, this point being in serious dispute, she could not be required to make an election as to the remedy which she would pursue until her rights under the Federal statute were judicially determined; and that, in so far as the Federal act is concerned, respondent is not foreclosed from asserting her claim thereunder by anything she did under the state law. This court having now decided that no right under the Federal act existed in respondent's favor, the effect of respondent's conduct, in claiming and accepting compensation, upon her right to sue under the state statute must be considered.

The appropriate division of the department of labor and industries had the power to make a finding of fact, first, as to the classification of the logging railroad; and second, as to the rights of respondent under her claim for compensation. Such findings in proper cases become binding upon all parties concerned. 34 C. J. 878, § 1287; L. R. A. 1916A 266.

We are satisfied that, by her conduct and by the adjudication made by the department upon her claim, respondent is estopped from maintaining this action under the state statute above referred to, and that it

must be held that she is limited to the remedy which she sought by way of a claim for compensation, her rights under that branch of the statute having been definitely and finally fixed and determined by the proper officers of the department. No appeal was taken from this adjudication, respondent accepted the benefits thereof, and the same has become final. Granting, as argued by respondent, that, if she actually had a cause of action under the Federal law, it should not now be held that she had lost the right to pursue it by asking and accepting benefits under the state law, a different question is presented, now that it has been determined that she never actually had any right under the Federal statute. That statute is, of course, exclusive as to cases which properly fall within its terms; but, since it is not applicable under the indisputable facts of this case, respondent's right is governed by one branch or another of the workmen's compensation act.

We are clearly of the opinion that respondent, by her conduct in proceeding under the compensatory provisions of the act and asking for and accepting a departmental finding in her favor under those provisions, is now estopped from proceeding under the section of the act above referred to and from claiming that her right lies under that section and not under the sections providing for compensation. Rem. Comp. Stat., § 7697; *Gaffney v. Megrath*, 23 Wash. 476, 63 Pac. 520; *Samuels v. Harrington*, 43 Wash. 603, 86 Pac. 1071; *State v. Bayles*, 121 Wash. 215, 209 Pac. 20; *Anderson v. Bauer*, 146 Wash. 594, 264 Pac. 410; *Chicago, R. I. & P. R. v. Schendell*, 270 U. S. 611; *Dennison v. Payne*, 293 Fed. 333; *Holmes v. Henry Jennings & Sons*, 7 Fed. (2nd) 231; *In re Famous Players Lasky Corporation*, 30 Fed. (2nd) 402; *Williams v. Southern Pacific Co.*, 54 Cal. App. 571, 202 Pac. 356.

The judgment appealed from is reversed, with instructions to the trial court to dismiss the action.

TOLMAN, C. J., PARKER, MAIN, MITCHELL, and MILLARD, JJ., concur.

HOLCOMB, J., concurs in the result.

FULLERTON, J.—I concur in the judgment directed by the majority, for the reasons stated in the Department opinion.

[1]Reported in 295 Pac. 167.