FRANK X. SCHOSBOEK, *Respondent,* v. CHICAGO, MIL-
WAUKEE, ST. PAUL AND PACIFIC RAILROAD
COMPANY *et al., Appellants.*[1]

[1]Reported in 63 P. (2d) 477.

*A. N. Whitlock, O. G. Edwards,* and *A. J. Laughon,* for appellants.

*Wright & Wright* and *Padden & Moriarty,* for respondent.

Holcomb, J.—This action was brought to recover damages for personal injuries suffered by respondent on October 8, 1931, while he was a section foreman in the employ of appellant railroad company and assisting, under the direction of appellant Hall, supervising agent and vice-principal of the company, in extinguishing a fire on the railroad right of way and premises of the company at Hyak, in this state. The action was tried to the court and a jury. The complaint in the action was filed April 30, 1934.

Following the overruling of a demurrer to the com-

plaint, appellants answered, alleging affirmatively that the company was a common carrier by railroad engaged in the transportation of goods in both interstate and intrastate commerce, and that the plaintiff was injured while performing the duties of his employment assisting in extinguishing a fire burning on the right of way and premises of the railroad company, which endangered its property and facilities used in its interstate and intrastate business; and, further, that the action was not commenced within the time limited by law.

The amended reply admitted that the railroad company was a common carrier of interstate and intrastate commerce, but contained this further allegation:

" . . . . but this plaintiff denies that on the night of said day and at the time he was injured, that he was employed in the capacity or in the manner or at the place in said affirmative defense alleged, and states the fact to be that the place of his employment at the time of his injury was not on the defendant corporation's railroad line, nor did said place of employment embrace or include the station at Hyak, Kittitas county, Washington, but his employment at the time of his injury consisted of aiding in extinguishing a fire in a building owned by the defendant corporation and allotted and used exclusively for residence purposes by employees of said company, pursuant to an occupancy agreement of rental between the employees of said company and said company; and that when the plaintiff was injured, he was not engaged in commerce of any kind, either interstate or intrastate, nor was the building in which the fire was, in any way an instrumentality or a facility of commerce of any kind, nor directly connected therewith."

Each appellant demurred to the amended reply and moved for judgment on the pleadings, both of which were overruled. At the close of respondent's case and again at the conclusion of all the evidence, challenges to the sufficiency of the evidence were overruled.

The jury returned a verdict for respondent for $27,500. Motions for judgment n. o. v. were denied, as were also motions for a new trial, but the latter conditionally upon respondent filing a written remission of $12,500 of the verdict. ·

This appeal is based upon questions of law raised by the facts established by respondent, which, so far as material, are as follows:

On October 8, 1931, respondent was in the employ of appellant railroad company as section foreman. His duties at all times included looking after the track and property of the company. On that day, his work, performed some four miles east of Hyak station, consisted of raising track. His regular day's work ended at five o'clock in the afternoon, following which he went to his home.

About seven-thirty o'clock that evening, noticing a fire and learning that it was one of appellant company's buildings at Hyak about one-half mile distant, he called the men who worked under him and rushed with them to the scene of the fire. The burning building was one of three dwellings for company employees located upon the railroad right of way in the vicinity of the depot and substation used in connection with the operation of electrically driven trains. Realizing that it was impossible to save any of the building on fire, respondent and his men devoted their energies to saving the adjacent buildings by throwing water upon them.

About ten o'clock that evening, after the flames had subsided and respondent felt that there was no danger of the fire spreading, he went to the nearby depot and sent a message to the chief dispatcher of appellant company, apprising him that the fire was under control and that he, respondent, had left two men on duty at the place of the fire, but would himself go home and

return in the morning. As respondent came out of the depot after sending this message, he met his immediate superior, appellant Hall, who directed that respondent assist in saving a quantity of coal, estimated at ten to fifteen tons, which had but recently been stored in the basement of the burning building. However, before attempting to extinguish the fire which might destroy the coal, respondent assisted in extinguishing a fire on a transmission line pole and wetting down the buildings nearby, the pole referred to being then used for supporting wires which carried the electricity for operating interstate trains.

Thereafter, their efforts were directed to the premises of the burning building in order to save the coal therein. While doing this work and while following the instructions of Hall, respondent was injured by falling brick from the chimney of the burning house, following an explosion caused by Hall so negligently directing a hose held by him that water struck the hot bricks.

The thirteen assigned errors by appellant raise only questions of law which are argued in three groups.

Appellants first urge that respondent's case falls within the scope of the Federal employers' liability act, and hence the limitation contained therein that "No action shall be maintained under this chapter unless commenced within two years from the day the cause of action accrued" (45 U. S. C. A. § 56) precludes a right of action. Their theory of the case is that the Federal employers' liability act contemplates the existence of two conditions: First, that the employer be a common carrier by railroad engaged in the transportation of interstate commerce; and second, that the employee, at the time of the injury, be engaged in such transportation or in work so closely related to it as to be practically a part of it; that the first con-

dition admittedly existed, and that the second was established from the undisputed facts. Further pursuing their theory, it is asserted that, in determining the scope and application of the act, the United States supreme court has dealt with two distinct lines of service performed by an employee at the time of the injury. The first has to do with the interstate movement itself in which he is employed; and the second, which is claimed to apply in this case, is where the employee is maintaining, repairing and preserving the utilities of the employer which are devoted to the transportation of interstate commerce, but which have no relation to the actual movement of interstate commerce.

From these premises, appellants argue that the burning of the coal and debris in the basement of the dwelling made it necessary for respondent to perform his duty of protecting the transmission line pole as well as nearby buildings, all of which were facilities used in interstate commerce, the dwellings being owned by the company and used by it to house its employees who were engaged in interstate service.

The first section of the Federal employers' liability act (U. S. C. A., Title 45, § 51) provides:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . "

Whether this provision is applicable to a given situation is a Federal question, and therefore the decisions of the Federal courts are controlling. *Hilliard v. Clifford*, 134 Wash. 590, 236 Pac. 108; *Bennor v. Oregon-Washington R. & Nav. Co.*, 175 Wash. 559, 27 P. (2d) 1082; *Stanke v. Spokane, Coeur D'Alene & Palouse R. Co.*, 181 Wash. 472, 43 P. (2d) 961.

■ Considering § 51 of the act, from which we have just quoted, the United States supreme court has, on numerous occasions, said that the act applies only when the employee at the time of the injury was engaged in interstate transportation or in an act so closely related to it as to be practically a part or incident of it, distinction being made between the words *commerce* and *transportation*. Cases of that court so holding are: *Shanks v. Delaware L. & W. R. Co.*, 239 U. S. 556, 36 S. Ct. 188; *Chicago, B. & Q. R. Co. v. Harrington*, 241 U. S. 177, 36 S. Ct. 517; *Southern Pac. Co. v. Industrial Acc. Commission*, 251 U. S. 259, 40 S. Ct. 130, 10 A. L. R. 1181; *Industrial Acc. Commission v. Davis*, 259 U. S. 182, 42 S. Ct. 489; *Baltimore & O. S. W. R. Co. v. Burtch*, 263 U. S. 540, 44 S. Ct. 165; *Chicago & N. W. R. Co. v. Bolle*, 284 U. S. 74, 52 S. Ct. 59; *New York, New Haven & H. R. Co. v. Bezue*, 284 U. S. 415, 52 S. Ct. 205, 77 A. L. R. 1370.

From the foregoing decisions, it is clear that respondent was not, at the time of his injury, engaged in interstate transportation or in work so closely related to it as to be a part of it. He was at the time assisting in extinguishing a fire in a building which had absolutely nothing to do with transportation. What respondent was doing before his injury is of no importance in this case, for, as stated in the *Shanks* case, *supra:*

"What his employment was on other occasions is immaterial, for, as before indicated, the act refers to the service being rendered when the injury was suffered."

■ It is next contended by appellants that, as the railroad company is admittedly a common carrier by railroad engaged in the transportation of interstate and intrastate commerce, and as respondent was injured while performing his duties as a section foreman in the employ of the company, he is subject to the pro-

visions of Rem. Rev. Stat., § 7693 [P. C. § 3486], which, it is claimed, give him the same rights and subject him to the same limitations as are contained in the Federal employers' liability act. If this be true, then the two-year limitation for the bringing of actions under that act bars respondent's right to sue. 45 U. S. C. A., § 56. *Bennor v. Oregon-Washington R. & Nav. Co., supra.*

Section 7693 [P. C. § 3486], *supra,* which is a part of our workmen's compensation act, provides:

"Inasmuch as it has proved impossible in the case of employes of common carriers by railroad, engaged in maintenance and operation of railways doing interstate, foreign and intrastate commerce, and in maintenance and construction of their equipment, to separate and distinguish the connection of such employes with interstate or foreign commerce from their connection with intrastate commerce, and such employes have, in fact, received no compensation under this act, the provisions of this act shall not apply to work performed by such employes in the maintenance and operation of such railroads or performed in the maintenance or construction of their equipment, or to the employes of such common carriers by railroad engaged therein, but nothing herein shall be construed as excluding from the operation of this act railroad construction work, or the employes engaged thereon: Provided, however, that common carriers by railroad engaged in such interstate or foreign commerce and in intrastate commerce shall, in all cases where liability does not exist under the laws of the United States, be liable in damages to any person suffering injury while employed by such carrier, or in case of the death of such employe, to his surviving wife and child, or children, and if no surviving wife or child or children, then to the parents, sisters, or minor brothers, residents of the United States at the time of such death, and who were dependent upon such deceased for support, to the same extent and subject to the same limitations as the liability now existing, or hereafter created, by the laws of the United States governing recoveries by railroad employes injured while engaged in interstate commerce:

Provided, further, however, that if any interstate common carrier by railroad shall also be engaged in one or more intrastate enterprises or industries (including street railways and power plants) other than its railroad, the foregoing provisions of this section shall not exclude from the operation of the other sections of this act or bring under the foregoing proviso of this section any extrahazardous work of such other enterprise or industry, the pay-roll of which may be clearly separable and distinguishable from the pay-roll of the maintenance or operation of such railroad, or of the maintenance or construction of its equipment: Provided, further, that nothing in this section shall be construed as relieving an independent contractor engaged through or by his employes in performing extrahazardous work for a common carrier by railroad, from the duty of complying with the terms of this act, nor as depriving any employe of such independent contractor of the benefits of this act.''

The foregoing section is an amendment of the laws of 1911, chapter 74, p. 367, § 18, which was a part of the original workmen's compensation act.

In considering the purpose and scope of the amendment of 1917 (Laws 1917, chapter 28, p. 97, §·19), in *Spokane & Inland Empire R. Co. v. Wilson,* 104 Wash. 171, 176 Pac. 34, we said:

''When the workmen's compensation act (Rem. Code, § 6604-1 *et seq.*) was passed in 1911, it was anticipated that there had been substituted for the common law liability of employers a sure and certain compensation for all railroad employees except those who come within the Federal employers' liability act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657-8665]). Under the operation of the law, however, it became apparent that, as stated in the amendment of 1917 (Laws 1917, p. 96, § 18), a great deal of confusion arose in cases of employees engaged upon railroads doing both interstate and intrastate business. From the statement of the business engaged in by the three companies involved in these suits, it is apparent that great numbers of employees are engaged

in work so impossible of segregation as to whether it is at any given time interstate or intrastate that the question of whether they came within the state law or the Federal law is impossible of determination. In attempting to remedy this situation, and, at the same time, not to remit employees to the uncertainty of the common law liability, the amendment of 1917 was enacted; and, as we view it, that act, instead of attempting to segregate employees into two classes—those engaged in interstate and those engaged in intrastate work—in effect, said that it matters not whether the employees are engaged in interstate or intrastate work so long as the company for which they were working was a railroad actually engaged to some extent in doing an interstate, foreign or intrastate commerce. In other words, the character of the business of the railroad company determines the status of the employees, and if a portion of the railroad company's business is interstate, the employees engaged in its maintenance and operation, or in the maintenance and construction of its equipment, should not come within the operation of the state law, but that all such employees could recover in the state courts, not under the common law liability, but under the liability imposed under the amendment, which is the same liability fixed by the United States in the Federal employers' liability act. To give this amendment any other construction would be to read something into it which it does not contain; and to attempt to construe it with reference to the proportion of the company's business which may be interstate and apply the amended act only to such companies whose interstate business bears a certain proportion to their entire business, is not only rewriting the amendment, but also perpetuating and increasing the confusion which the amendment recognized and sought to obviate. Under this interpretation of the act, the employee is the beneficiary of a clear definition of his status; for, if his employer is a railroad company a portion of whose business is interstate, he knows, by reason of that fact, that his remedy for an injury received is not compensation under the workmen's compensation act, but that he has the same protection in the state courts

which the Federal act gives to employees of interstate railroad companies.

" . . . In place of the uncertainty and practical impossibility of determining whether employees should be classified as being engaged in interstate and intrastate work, the amendment gives all the employees in maintenance and operation and maintenance and construction of equipment of a railroad actually doing an interstate business as a portion of its general railroad business, the benefit of the same rules of liability provided by the Federal government in cases against interstate carriers."

In *Archibald v. Northern Pac. R. Co.,* 108 Wash. 97, 183 Pac. 95, we again said:

"By the enactment of the legislature of 1917, contained in Laws of 1917, ch. 28, p. 96, § 19, the appellant and respondent have the same rights and are under the same liabilities and are subject to the same rules of evidence and the same defenses whether the action be prosecuted under the Federal employers' liability law or the state law. That is, the state law has established the same rules of evidence and procedure for actions against carriers engaged in both interstate and intrastate commerce as is provided by the Federal employers' liability act in the case of interstate carriers."

In *Kidder v. Marysville & Arlington R. Co.,* 160 Wash. 471, 295 Pac. 162, 300 Pac. 170, plaintiff sued the railroad company under the Federal employers' liability act for the wrongful death of her husband, a brakeman, employed on a logging road of defendant. While it was not decided whether or not the railroad company was engaged in interstate commerce, and although the court held that plaintiff was estopped to pursue this remedy by reason of having filed a claim with the department of labor and industries and having received compensation under the workmen's compensation act, it was, nevertheless, said:

"Under the section of the workmen's compensation act above quoted, and the amendment thereto, if a com-

mon carrier by railroad is engaged in both interstate and intrastate business, its employees engaged in intrastate business do not come under the provisions of the act providing for compensation; but there is thereby created as to them a statutory right of action practically identical with that which the Federal act provides for employees of railroads engaged in interstate commerce.''

Although respondent was not engaged in interstate commerce at the time of injury, he was an employee of appellant company, which was a common carrier by railroad engaged in the maintenance and operation of a railroad doing both interstate and intrastate commerce; and, so far as the record discloses, that is the only business of appellant company.

■ It is argued on behalf of respondent that he was not engaged in any commerce whatever, but the test is not what an employee was doing when injured, but rather what the employer's business was, for, as stated in *Spokane & Inland Empire R. Co. v. Wilson, supra,* ''the character of the business of the railroad company determines the status of the employees.'' Certainly, the company here was engaged in the ''maintenance and operation'' of an interstate railroad. That was its business and its only business which the record discloses. What respondent was doing at the time of the injury was in furtherance of, incidental to, and therefore a part of, that business. The undisputed evidence shows that the burned building was occupied by one Santee, who operated the nearby substation used in the distribution of electrical energy which ran the interstate and intrastate trains, the coal mentioned was, of course, for heating the building, which was certainly a part of the railroad ''equipment,'' and extinguishing of the fire was incidental to its ''maintenance.''

■ Respondent argues, however, that a state statute which imposes a liability upon interstate carriers

for damages for personal injuries to employees violates the Federal constitution which provides, Art. I, § 8:

"The congress shall have power,— . . .
"To regulate commerce with foreign nations and among the several states . . ."

3 Encyclopedia of United States Supreme Court Reports, Perm. Supp., 177, says:

"The laws of the several states are determinative of the liability of employers engaged in interstate commerce for injuries received by their employees while engaged in such commerce so long as congress, although empowered to regulate that subject, has not acted thereon, because the subject is one which falls within the police power of the states in the absence of action by congress."

This statement is supported by *Valley Steamship Co. v. Wattawa,* 244 U. S. 202, 37 S. Ct. 523, reading:

"In the absence of congressional legislation the settled general rule is that without violating the Commerce Clause the States may legislate concerning relative rights and duties of employers and employees while within their borders although engaged in interstate commerce."

*Raymond v. Chicago, M. & St. P. R. Co.,* 243 U. S. 43, 37 S. Ct. 268, also holds that the operation of a state workmen's compensation act is not prevented merely because a railway employee is in a general sense engaged in interstate commerce. In *Missouri Pac. R. Co. v. Castle,* 224 U. S. 541, 32 S. Ct. 606, it was held that since, at the time the plaintiff received the injuries complained of, there was no subsisting legislation by Congress affecting the liability of railway companies to their employees, under the conditions shown in this case, the state was not precluded from thus legislating for the protection of railway employees engaged in interstate commerce.

Admittedly, respondent was not within the provisions of the Federal employers' liability act by reason of any Federal statute, hence the state might provide the relief to which he was entitled.

 There is no alternative but to hold that § 7693 [P. C. § 3486], *supra,* is applicable in the instant case, and as that section grants only a remedy which is, to the same extent and subject to the same limitations, fixed by the laws of the United States governing recoveries by railroad employees injured while engaged in interstate commerce, the Federal employers' liability act fixes those rights and limitations. Consequently, under § 56 of that act, this action is barred because it was not instituted within the two-year period specified.

It follows that the trial court should have granted the motion of appellants for judgment n. o. v. The judgment is therefore reversed, with direction to the trial court to dismiss the action.

MILLARD, C. J., MAIN, BEALS, and BLAKE, JJ., concur.