## McCLUSKEY, ADMINISTRATOR OF NORDGARD, v. MARYSVILLE & NORTHERN RAILWAY COMPANY ET AL.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 166. Argued January 30, 31, 1917.—Decided March 6, 1917.

The course of business of a company engaged in logging and milling timber consisted in carrying its logs from its own timber-land within a State over its own logging railroad to tidewater, in the same State, in selling there a part to others who towed them away and re-sold them to purchasers within and without the State, and in towing the rest to its mills in the same State, milling them at the latter place and then disposing by sale of their products partly in local markets and partly in other States and countries. *Held*, that the transportation of the logs by the railroad was not interstate or foreign commerce, and that an employee of the railroad, injured while engaged in unloading some of them at the tidewater terminus, was not employed in such commerce, within the Federal Employers' Liability Act.

A plaintiff in an action for personal injuries based on the Federal Employers' Liability Act died while the case was pending in the Circuit Court of Appeals. Writ of error to review an adverse judgment of that court having been subsequently sued out in his name and citation issued and served, attorneys for both sides stipulated that his administrator might be substituted. Substitution, however, was refused by the Court of Appeals upon the ground that the writ had deprived it of jurisdiction. Upon a motion to dismiss upon the ground that the writ was wrongfully allowed and the administrator not properly a party, *Held*, that the defect of the proceedings was at most an irregularity which, in view of the stipulation, was waived.

218 Fed. Rep. 737, affirmed.

AFTER judgment against plaintiff in the court below, the writ of error from this court was allowed by a judge of that court March 15, 1915, upon a petition therefor made by plaintiff's attorney in plaintiff's name. Citation was

issued conformably, March 22, 1915, of which service was admitted by defendants' attorneys March 23d.   In April following attorneys for both sides stipulated that the plaintiff died February 28, 1915, while the cause was pending in the court below, that his administrator was duly appointed March 23, 1915, and that the administrator might be substituted, and application for an order of substitution was made accordingly by plaintiff's attorney, but was refused by the court below upon the ground that issuance of the writ of error had deprived it of jurisdiction over the cause.   The facts are stated in the opinion.

*Mr. John T. Casey,* with whom *Mr. George F. Hannan* and *Mr. Chas. R. Pierce* were on the briefs, for plaintiff in error.

*Mr. E. C. Hughes,* with whom *Mr. Maurice McMicken, Mr. Otto B. Rupp* and *Mr. H. J. Ramsey* were on the brief, for defendants in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

This suit was brought under the Employers' Liability Act to recover damages resulting from injuries suffered by Nordgard while in the employ of the defendant railway company.   The trial court directed a verdict for the defendants on the ground that there was no evidence tending to show that the defendants and Nordgard were engaged at the time of the accident in interstate or foreign commerce, and the case is here on writ of error to secure a reversal of the action of the court below affirming the judgment entered by the trial court dismissing the suit.   218 Fed. Rep. 737.

These are the facts: The defendant Stimson Mill Com-

pany was engaged in the logging and lumber business and
carried its logs on its own logging railroad, the Marysville
& Northern Railway, from timber land owned by it in
Washington to a point near Marysville in that State
where they were dumped into the waters of Puget Sound.
Part of the logs were thereafter sold to mills located on
the sound and the balance were rafted and taken by tugs
to the Stimson Company's mills at Ballard, Washington,
where they were manufactured into timber, which was
thereafter sold, about twenty per cent. in local markets
and the remainder in other States and countries. The
logs which were sold after they had been carried to tide-
water by the railroad were towed away by the purchasers
to their mills or places for storage and part of them were
subsequently re-sold for piling or poles to purchasers both
within and without the State. Nordgard was a brake-
man on the logging railroad and suffered the injuries for
which he sued while engaged in unloading logs from the
cars at tidewater.

The conclusion of the court below that under these
facts the defendants were not engaged in interstate or
foreign commerce when the injuries were suffered was
based upon the decisions in *Coe* v. *Errol*, 116 U. S. 517,
and *The Daniel Ball*, 10 Wall. 557, from the former of
which the following quotations were made:

"When the products of the farm or the forest are col-
lected and brought in from the surrounding country to a
town or station serving as an entrepôt for that particular
region, whether on a river or a line of railroad, such prod-
ucts are not yet exports, nor are they in process of exporta-
tion, nor is exportation begun until they are committed to
the common carrier for transportation out of the State to
the State of their destination, or have started on their ulti-
mate passage to that State." 116 U. S. 517, 525.

"But this movement [that is, interstate commerce
movement] does not begin until the articles have been

shipped or started for transportation from one State to the other. The carrying of them in carts or other vehicles, or even floating them, to the depot where the journey is to commence is no part of that journey. . . . Until actually launched on its way to another State, or committed to a common carrier for transportation to such State, its destination is not fixed and certain. It may be sold or otherwise disposed of within the State, and never put in course of transportation out of the State." 116 U. S. 517, 528.

After pointing out that these rulings had not been modified, but on the contrary had been re-affirmed by the subsequent cases relied upon by the plaintiff in error (*Texas & New Orleans R. R. Co.* v. *Sabine Tram Co.*, 227 U. S. 111; *Louisiana Railroad Commission* v. *Texas & Pacific Ry. Co.*, 229 U. S. 336; *Southern Pacific Terminal Co.* v. *Interstate Commerce Commission*, 219 U. S. 498; *Ohio Railroad Commission* v. *Worthington*, 225 U. S. 101) the court said:

"In the case at bar there was no initial shipment of the goods. The transportation of the poles from the forest in which they were cut to tidewater, where they were sold, was not a shipment. There was no contract of carriage; there was no bill of lading; there was no consignor or consignee. The goods were not committed to a carrier. The defendant Mill Company simply carried over its own road, on its own cars, its own goods to a market where it sold and delivered them. It had no concern with the subsequent disposition of them. It was under no obligation to deliver them to another carrier, and no other carrier was under obligation to receive them or carry them further. The selling of the poles after the first sale by the Mill Company, or whether they were going outside of the State, depended upon chance or the exigencies of trade. The movement of the poles did not become interstate commerce until by the act of the purchasers thereof the

poles were started on their way to their destination in another State or country. The beginning of the transit which constitutes interstate commerce 'is defined in *Coe* v. *Errol,* to be the point of time that an article is committed to a carrier for transportation to the State of its destination, or started on its ultimate passage.' *General Oil Co.* v. *Crain,* 209 U. S. 211, 229."

The conclusion of the court below that the defendants were not engaged in interstate or foreign commerce when the accident occurred is, we think, clearly demonstrated by the reasoning by which it sustained its conclusion and the authorities upon which it relied as above stated, and its judgment should be affirmed.

Before concluding we observe that in view of the stipulation of the parties in the court below agreeing to the substitution as plaintiff in error of the administrator of Nordgard who died while the cause was there pending, the motion to dismiss on the ground that the writ of error was wrongfully allowed and that the administrator is not a proper party is based upon a mere irregularity which was waived.

*Affirmed.*