### KACH v. MONESSEN SOUTHWESTERN RY. CO.

No. 8946.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 4, 1945.

Decided Oct. 23, 1945.

Marvin D. Power, of Pittsburgh, Pa. (Charles J. Margiotti and Margiotti & Ca-

sey, all of Pittsburgh, Pa., and W. A. Endle, of Cleveland, Ohio, General Counsel, Brotherhood of Railroad Trainmen, on the brief), for appellant.

P. K. Motheral, of Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., on the brief), for appellee.

Before ALBERT LEE STEPHENS, MARIS and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The sole question which this appeal presents is whether the defendant, the Monessen Southwestern Railway Company, is a common carrier by railroad which is engaged in interstate commerce within the meaning of the Federal Employers' Liability Act,[1] the Federal Safety Appliance Acts[2] and the Boiler Inspection Act.[3] In the plaintiff's suit for damages for injuries suffered while employed as a locomotive fireman by the defendant the trial judge held that the defendant was "not a common carrier of persons or property on a railroad engaged in [interstate] commerce * * * at the time of the plaintiff's injuries." A verdict was accordingly directed for the defendant. From the judgment entered thereon the appeal now before us was taken.

The defendant in its amended answer to the complaint admitted that it was engaged in doing business as a common carrier by railroad for hire under the laws of Pennsylvania but denied that it was engaged in interstate commerce and transportation at the time and place of the occurrences complained of. The defendant is a wholly owned subsidiary of the Pittsburgh Steel Company and its railroad, the main track of which is 7½ miles in length, connects the various works of that company at Monessen, Pennsylvania, with the lines of the Pittsburgh & Lake Erie Railroad Company and the Pittsburgh & West Virginia Railway Company.

The evidence discloses that the defendant receives cars loaded with raw materials consigned to the Steel Company from the two connecting railroads and places them at the appropriate points in the works of the Steel Company. It also receives from the Steel Company cars loaded with the manufactured product of that company and moves them from the points of loading to points of connection with the connecting railroads. The defendant, however, does not publish tariffs of any kind, does not issue bills of lading, its name does not appear on any of the bills of lading covering the inbound shipments received from the connecting railroads and it does not participate in any of the freight rates covering the materials transported by those railroads. The defendant charges the Steel Company for its car spotting services and per hour hire for services of motor power and crew, locomotive cranes and crews, and shovels.

The evidence further discloses that three days prior to the day on which the plaintiff was injured the defendant moved a loaded car which had been consigned from a point outside of Pennsylvania to the Steel Company at Monessen, that two days prior thereto the defendant moved sixteen cars which had been consigned from various points outside of Pennsylvania to the Steel Company at Monessen, that on the day of the accident the defendant moved three empty cars from its yards to the Steel Company's plant at Monessen for loading there to points outside of Pennsylvania and that the plaintiff as a locomotive fireman participated in all these movements.

We think that the facts thus disclosed establish that the defendant railroad is engaged in interstate commerce within the meaning of the acts upon which the plaintiff relies. The fact that the defendant railroad does not itself transport consignments of freight across state lines does not place it beyond the reach of the federal power under the commerce clause of the Constitution. Const. art. 1, § 8, cl. 3. If it takes part with other carriers in the continuous movement of a consignment of freight which passes across a state line at some point in its journey between the place of origin and the place of destination it becomes a participant in interstate commerce and, therefore, subject to the power of Congress under the commerce clause of the Constitution.[4] The evidence, as we

---

[1] 45 U.S.C.A. § 51 et seq.

[2] 45 U.S.C.A. § 1 et seq.

[3] 45 U.S.C.A. § 22 et seq.

[4] Philadelphia & R. R. Co. v. Hancock, 1920, 253 U.S. 284, 40 S.Ct. 512, 64 L. Ed. 907; United States v. Colorado & N. W. R. Co., 8 Cir., 1907, 157 F. 321, 15 L. R.A.,N.S., 167, 13 Ann.Cas. 893, certiorari denied 209 U.S. 544, 28 S.Ct. 570, 52 L. Ed. 919; Belt Ry. Co. of Chicago v. United States, 7 Cir., 1909, 168 F. 542, 22 L. R.A.,N.S., 582, certiorari denied, 223 U.

have seen, discloses that the defendant does exactly that.

Although the defendant's operation is largely confined to the movement of cars into and out of the Steel Company's works it nonetheless does move for a portion of their trip carloads of freight which have been definitely committed to an interstate journey. Compare Philadelphia & R. R. Co. v. Hancock, 1920, 253 U.S. 284, 40 S. Ct. 512, 64 L.Ed. 907. It is in this respect that the case is distinguishable from Mc-Cluskey v. Marysville & N. R. Co., 1917, 243 U.S. 36, 37 S.Ct. 374, 61 L.Ed. 578, relied upon by the defendant. In view of the fact that the defendant does physically participate in a portion of the interstate movement of consignments of freight it becomes wholly unimportant that it does not itself publish tariffs or participate in the tariff charges of its connecting railroads.

■ The defendant points out that before a railroad may lawfully operate in interstate commerce it first must obtain a certificate of public convenience and necessity from the Interstate Commerce Commission. It states that the Commission has refused it such a certificate [5] and has held it to be a mere plant facility of the Steel Company.[6] The defendant urges that these determinations by the Commission are binding upon us and establish that the defendant is not engaged in interstate commerce. It is unnecessary for us to consider the nature or extent of these determinations by the Commission, however, for we cannot agree that they control the disposition of the case now before us. The plaintiff was not a party to them. He is entitled to a judicial determination of the question whether the defendant is engaged in interstate commerce within the meaning of the acts upon which he relies without regard to what the Interstate Commerce Commission may have determined in a proceeding of a different nature brought under other statutes.

Under the facts of this case there is, as we have already demonstrated, no room for doubt that the defendant is engaged in interstate commerce within the meaning of the commerce clause of the Constitution. The Act of August 11, 1939 [7] amended Section 1 of the Federal Employers' Liability Act by adding thereto the following provision: "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate * * * commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Act. * * *"

■ In the light of this amendment it was not necessary for the plaintiff to show that either he or the defendant was engaged in the movement of an interstate shipment of freight at the very moment of the injury. The evidence clearly established that the defendant habitually participated in the movement of interstate shipments of freight and that the plaintiff customarily assisted as a locomotive fireman in those movements. The amended act requires no greater showing than this.[8]

The judgment is reversed and the cause is remanded to the district court for a new trial.

S. 743, 32 S.Ct. 532, 56 L.Ed. 638. For an interesting discussion see opinion of Judge Cardozo in Cott v. Erie R. Co., 1921, 231 N.Y. 67, 131 N.E. 737, certiorari denied, 257 U.S. 636, 42 S.Ct. 49, 66 L.Ed. 409. See also Roberts on Injuries to Interstate Employees on Railroads, § 67. Compare Baltimore & O. S. W. R. Co. v. Settle, 1922, 260 U.S. 166, 43 S.Ct. 28, 67 L.Ed. 189.

[5] Monessen S. W. Ry. Co. Operation, 217 I.C.C. 181.

[6] Pittsburgh Steel Company Terminal Allowance, 209 I.C.C. 87, 91, 92; Pittsburgh Steel Company Terminal Allowance, 241 I.C.C. 562, 563.

[7] 53 Stat. 1404.

[8] Lukon v. Pennsylvania R. Co., 3 Cir., 1942, 131 F.2d 327; Edwards v. Baltimore & O. R. Co., 7 Cir., 1942, 131 F.2d 366, 369.