## McDOWELL v. CANTON R. CO.
### No. 6643.

United States District Court,
D. Maryland, Civil Division.

Feb. 10, 1954.

Benj. Swogell, Baltimore, Md., for plaintiff.

R. Dorsey Watkins, Baltimore, Md., Piper & Marbury, Baltimore, Md., for defendant.

CHESNUT, District Judge.

The plaintiff in this case is suing for injuries alleged to have been received by virtue of negligence of the employer in failing to furnish a safe place to work. The suit is based on the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The coverage of this Act as originally passed was limited to employees engaged in interstate commerce. By an amendment to the Act in 1939 it is now expressed to extend to employees whose work directly, closely and substantially affects interstate commerce. 45 U.S.C.A. § 51, 2d par.

The motion has been argued by counsel on the basis of a stipulation entered into relating to the plaintiff's activities. Very briefly condensed, the principal facts are these. The Canton Company is a land development and real estate holding company now or originally holding large tracts of land in the southeastern section of Baltimore City bordering on the waterfront, known as Canton. It has a subsidiary known as the Canton Railroad Company which operates a railroad a few miles from the waterfront to connect with the Pennsylvania Railroad Company lines in Maryland and by ferry service with the Baltimore and Ohio Railroad Company in Baltimore. It appears that the plaintiff has been employed by the Railroad Company for about five years as a laborer. During the last six months prior to the accident he was from time to time assigned to work either for the Canton Company or the Railroad Company. As the Railroad Company connects with interstate railroad carriers it is not disputed in this case by counsel for the defendant that to the extent of the plaintiff's employment by the Railroad Company he was usually engaged in interstate commerce within the coverage of

the Act as amended. It is, however, the defendant's contention that at the time of the accident he was not covered by the Act.

The basis for this contention is this. The Canton Company constructed and owns a large concrete structure about 350 feet long and 50 feet wide situated on a pier at Canton. It was divided by three partitions, having no windows but constituting bins or storage spaces in which sulphur coming to the pier in ships could be unloaded into the bins and in turn loaded into railroad cars or trucks for interstate transportation. This structure was under lease from the Canton Company to the Canton Railroad Company and had been used and operated by the latter for some years past. Shortly before the accident to the plaintiff on June 30, 1952, the Canton Railroad Company had discontinued the receipt and carriage of sulphur and had so notified the steamship companies. It had also determined to apply at least one-half of the structure to other purposes and at the time of the accident was engaged in cleaning the walls and ceiling of two of the bins from sulphur dust which had accumulated and was remaining there. The plaintiff as a laborer had been engaged in this work of removing the sulphur dust for some days prior to the accident. It is said that the bins would be converted into offices or workshops for the Cottman Company engaged in the stevedoring business. Windows were to be cut in the cement walls and certain machinery was to be therein installed. It was contemplated that when the conversion was completed the existing lease from the Canton Company to the Railroad Company would be modified or another one substituted. It does not appear what plans, if any, there were for conversion or other use of the two remaining bins in the whole structure. The plaintiff alleges in his complaint that he was working on a defectively constructed scaffolding while engaged in removing the sulphur dust and that by virtue of its improper construction or security the scaffolding fell while he was at work, whereby he was injured.

It is the defendant's contention on these facts that at the time of the accident the plaintiff was not in any way engaged in interstate commerce within the coverage of the Act. This contention is disputed by the plaintiff. After hearing oral argument of counsel and considering their briefs and reviewing the numerous judicial decisions which have been cited, I conclude that the motion to dismiss must be *overruled,* but without prejudice.

The cases upon the general subject are numerous indeed. The defendant's chief contention is that a line of distinction as to what is and what is not interstate commerce as here applied is found in the difference between the construction of new facilities intended to be ultimately used for interstate commerce on the one hand, and on the other, the repair or reconstruction of old facilities. It is therefore argued that based on the stipulation the plaintiff was engaged in new construction work at the time of the accident and not on the repair of old facilities. However the plaintiff submits a plausible argument to the contrary based on the facts stipulated, contending that the structure which had been used for interstate commerce under lease by the Railroad Company was still under lease to it and that there was no really new construction but only repairs or alterations in an existing structure. Counsel for the plaintiff also relies strongly on the effect of the 1939 amendment and cites a number of comparatively recent judicial decisions to the general effect that the wording of the amendment shows that it was the intention of Congress to remove, so far as possible, uncertainty of judicial decision as to the coverage of the Act under its wording as originally passed and to liberalize and extend it to cases of interstate commerce previously regarded as doubtful or not within the coverage. Two recent decisions to this effect are Ermin v. Penna. R. R. Co., D.C.N.Y., 36

F.Supp. 936, and Kach v. Monessen Southwestern Ry. Co., 3 Cir., 151 F.2d 400.

As neither the facts nor the proper application of the law to this case are crystal clear at the present time, it is my view that the better practice is to overrule the motion without prejudice. It is possible and it is to be hoped that at the trial of the case the evidence will clear up any uncertainties that still exist as to the precise effect of the stipulation. This view is based on an analogy to the proper practice where on a motion for summary judgment the facts and law are of uncertain import. Stevens v. Howard D. Johnson Co., 4 Cir., 181 F.2d 390, 394.