NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SEALANT SYSTEMS INTERNATIONAL, INC., ACCESSORIES MARKETING, INC.,**
*Plaintiffs-Cross-Appellants*

**v.**

**TEK GLOBAL, S.R.L., TEK CORPORATION,**
*Defendants-Appellants*

---

2014-1405, 2014-1428

---

Appeals from the United States District Court for the Northern District of California in Nos. 5:11-cv-00774-PSG and 5:11-cv-01649-PSG, Magistrate Judge Paul S. Grewal.

---

Decided: June 11, 2015

---

STANLEY M. GIBSON, Jeffer, Mangels, Butler & Marmaro, LLP, Los Angeles, CA, argued for plaintiffs-cross appellants. Also represented by GREGORY S. CORDREY, ANDREW I. SHADOFF.

DANIEL E. JACKSON, Keker & Van Nest, LLP, San Francisco, CA, argued for defendants-appellants.

---

Before DYK, O'MALLEY, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

In this patent infringement suit, each side asserts the other infringed its patent on tire repair technology. Because the district court erred in certain aspects of its claim construction and obviousness analysis, this court reverses the summary judgment of obviousness with respect to the asserted claims of U.S. Patent No. 7,789,110 (the "'110 patent"). This court also reverses the district court's denial of judgment as a matter of law ("JMOL") on obviousness with respect to the asserted claims of U.S. Patent No. 6,789,581 (the "'581 patent"), vacates the injunction imposed by the district court, affirms the district court's denial of attorney fees, and remands for further proceedings.

BACKGROUND

TEK Global, S.R.L. ("TEK Global") is an Italian limited liability company and assignee of the '110 patent, which is generally directed to a kit for repairing and inflating inflatable articles, particularly tires. *See* '110 patent col. 1 ll. 1–3. In November 2010, TEK Global sued Sealant Systems International, Inc. ("Sealant"), a California corporation engaged in the sale and manufacture of tire repair kits, for infringement of the '110 patent in the United States District Court for the Southern District of New York.

In February 2011, Sealant filed suit against TEK Global in the United States District Court for the Northern District of California, seeking declaratory judgment of invalidity and noninfringement of the '110 patent. Asserting a lack of personal jurisdiction in the New York court, Sealant successfully moved to transfer the New York case to the Northern District of California and the

two cases were consolidated in May 2011. TEK Global's affiliate TEK Corp., a Michigan corporation (collectively, "TEK"), was later named as a defendant in Sealant's Second Amended Complaint.

Accessories Marketing Inc. ("AMI") is the "manufacturing arm" of Sealant, and the two entities are described as "sister companies." J.A. 72 n.187. Both AMI and Sealant are owned by Illinois Tool Works, and both are California corporations with their principal place of business in Grover Beach, California.

On April 29, 2011—two months after Sealant's initial complaint for declaratory relief was filed—AMI purchased the '581 patent, which also claims a kit for repairing and inflating tires, from non-party IDQ Operating, Inc. AMI was added as a plaintiff in Sealant's consolidated action in a First Amended Complaint dated June 17, 2011, which asserted AMI (but not Sealant) suffered damages caused by TEK Global's infringement of the '581 patent.

In March 2014, the district court granted Sealant and AMI's motion for summary judgment of invalidity of the '110 patent and denied TEK's motion for summary judgment of invalidity of the '581 patent. The district court found substantial evidence supported the jury's infringement verdict as to the '581 patent, and thus declined to grant JMOL that the '581 patent was invalid and not infringed, and entered a permanent injunction. *Sealant Sys. Int'l, Inc. v. TEK Global, S.R.L.*, No 5:11-cv-0074-PSG (N.D. Cal. Mar. 7, 2014) ("Order Granting Post-Trial Motions") (J.A. 31–94).

TEK appeals the district court's (1) denial of its motion for JMOL that the '581 patent is invalid and not infringed, (2) damages award based on the '581 patent, (3) issuance of a permanent injunction based on the '581 patent, and (4) grant of summary judgment of invalidity of the '110 patent. Sealant and AMI cross-appeal the

denial by the district court of their motion for attorney fees. This court has jurisdiction under 28 U.S.C. § 1295(a)(1) (2012).

DISCUSSION

I. Although Sealant Lacks Standing to Assert the '581 Patent, AMI Properly Asserted It

"[A] suit for infringement of patent rights [must] ordinarily be brought by a party holding legal title to the patent." *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007). "The question of standing to sue is a jurisdictional one, which we review *de novo*." *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc). "'[J]urisdiction of the [c]ourt depends upon the state of things at the time of the action brought.'" *Karstens Prods., Inc. v. Fed. Deposit Ins. Corp.*, 74 F.3d 1258, at *3 (Fed. Cir. 1995) (unpublished) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)). "The party bringing the action bears the burden of establishing that it has standing." *Sicom Sys. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).

TEK argues Sealant does not have standing to assert claims based on the '581 patent because Sealant has never held title to that patent, and AMI lacks standing because it did not own the '581 patent when the suit was originally filed by Sealant. In *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007), this court explained how standing requirements apply to three categories of patent plaintiffs: (1) patentees; (2) exclusive licensees; and (3) "those that hold less than all substantial rights to the patent and lack exclusionary rights under the patent statutes to meet the injury in fact requirement." *Id.* at 1340. Sealant is not an owner or assignee of the '581 patent, nor does it allege it is an exclusive licensee under the '581 patent. Under *Morrow*, Sealant cannot cure a standing deficiency with respect to the '581 patent by

adding AMI to the suit. *See id.* at 1341 (A "standing deficiency cannot be cured by adding the patent title owner to the suit.").

Although Sealant's standing to request declaratory relief with respect to the '110 patent is not in dispute, Sealant cannot establish standing to assert the '581 patent based on the case or controversy associated with the '110 patent. "[S]tanding is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks and citations omitted). Sealant therefore lacks standing to assert the '581 patent.

The more relevant dispute over standing, however, centers not on Sealant but on AMI. TEK acknowledges AMI's assertion that it could have brought a separate suit following its purchase of the '581 patent, but argues this is irrelevant because AMI instead elected to assert its claims in Sealant's previously-filed suit.

It is true the Supreme Court has stated "the standing inquiry . . . focus[es] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed," *Davis*, 554 U.S. at 734, and that AMI did not have such a stake in February 2011 when the suit it later joined was filed. However, the relevant standing inquiry focuses on the time at which a given claim is asserted, which will often (as in *Davis*) be the time the suit is filed. *See id.* at 731 (indicating Davis "request[ed] that § 319 [of the Bipartisan Campaign Reform Act of 2002] be declared unconstitutional" at the time he filed suit). The claim of infringement of the '581 patent was not asserted until after the suit was in process. Because AMI owned the '581 patent at the time it first asserted its claim against TEK, it has standing.

TEK's standing objection is more properly viewed as an objection to the joinder of AMI to Sealant's existing suit rather than to AMI's standing. AMI asserted infringement of the '581 patent in a First Amended Complaint dated June 17, 2011. If TEK opposed AMI's joinder or assertion of the '581 patent as part of Sealant's earlier-filed suit, it could have objected. *See, e.g.*, Fed. R. Civ. P. 21 ("Misjoinder and Nonjoinder of Parties"). Instead, on October 6, 2011, TEK stipulated to the filing of a Second Amended Complaint in which AMI again asserted the '581 patent. J.A. 6467–69 (TEK "hereby stipulate[s] that Plaintiffs may file a Second Amended Complaint for . . . (2) Patent Infringement [of the '581 patent] . . . , a copy of which is attached hereto."). The Second Amended Complaint asserted "AMI is now the assignee of the entire right, title and interest in and to the '581 Patent," and alleged infringement by TEK. J.A. 250, 329. The district court found TEK did not object to AMI's "standing" to seek damages for infringement of the '581 patent. J.A. 24 ("[A]s agreed upon by the parties, . . . AMI has standing."). TEK has therefore waived any argument as to misjoinder of AMI. *See P.J. McCluskey v. Marysville & N. Ry. Co.*, 243 U.S. 36, 40 (1917) ("[I]n view of the stipulation of the parties in the court below, agreeing to the substitution as plaintiff in error of the administrator of Nordgard, who died while the cause was [] pending, the motion to dismiss on the ground . . . that the administrator is not a proper party[] is based upon a mere irregularity which was waived.").

## II.   The District Court Erred in Construing the '110 Patent

Claim construction is a question of law, reviewed de novo, based on underlying findings of fact, which are reviewed for clear error. *Teva v. Sandoz*, 135 S. Ct. 831, 837–38 (2015). When construing claims, "courts are permitted to consider extrinsic evidence like expert testi-

mony, dictionaries, and treatises, [but] such evidence is generally of less significance than the intrinsic record." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1316 (Fed. Cir. 2014) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005)). "The intrinsic record includes the specification and the prosecution history." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004).

The parties agree the prior art discloses all the elements of Claim 1, the broadest claim, except for "a three-way valve" and "an additional hose." *SSI Sys. Int'l, Inc. v. TEK Global S.R.L.*, No. 11-cv-00774 PSG, at 7 (N.D. Cal. Mar. 7, 2013) ("Order Re TEK's Motions for Summary Judgment of Damages and Invalidity") (J.A. 1–25). The district court's claim construction analysis therefore focused on these terms. Claim 1 recites:

> A kit for inflating and repairing inflatable articles; the kit comprising a compressor assembly (2), a container (3) of sealing liquid, and connecting means (4, 5) for connecting the container to the compressor assembly (2) and to an inflatable article for repair or inflation, and being characterized by comprising an outer casing (6) housing said compressor assembly (2) and defining a seat (7) for the container (3) of sealing liquid, said container (3) being housed removably in said seat (7), and by comprising container connecting means (4, 40) for stably connecting said container to said compressor assembly (2), so that the container, when housed in said seat (7), is maintained functionally connected to said compressor assembly (2), said kit further comprising of an *additional hose (83) cooperating with* said inflatable article; and a *three-way valve (81)* input connected to said compressor assembly (2), and output connected to said container (3) and to said additional hose (83)

to direct a stream of compressed air selectively to
said container (3) or to said additional hose (83).

'110 patent col. 5 ll. 43–61 (emphases added).

The district court rejected TEK's asserted claim con-
struction of "cooperating with" as meaning "directly
connected to." Order Re TEK's Motions for Summary
Judgment of Damages and Invalidity at 8. Because the
district court relied upon only intrinsic evidence in reach-
ing this conclusion, this court's review is de novo. *See
Teva*, 135 S. Ct. at 841 ("[W]hen the district court reviews
only evidence intrinsic to the patent (the patent claims
and specifications, along with the patent's prosecution
history), the judge's determination will amount solely to a
determination of law, and the Court of Appeals will
review that construction *de novo*.").

The court explained that although the terms "con-
nected to" and "connecting" appear earlier in claim 1, the
applicant chose to use the term "cooperating with" in
regard to the additional hose. Order Re TEK's Motions
for Summary Judgment of Damages and Invalidity at 8.
The district court cited this court's statement that "[t]he
fact that [] two adjacent claims use different terms in
parallel settings supports the . . . conclusion that the two
terms were not meant to have the same meaning." *Aspex
Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335,
1349 (Fed. Cir. 2012). The fact pattern here differs from
that in *Aspex*, however, because the term "additional
hose" does not appear earlier in Claim 1; it is by reference
to the term "additional hose" that the term "cooperating
with" must be understood.

In this case a person having ordinary skill in the art
("PHOSITA") considering "addition hose 83" in the con-
text of the specification could only conclude that it is
connectable to a tire. The specification explicitly states
"additional hose 83 [is] connectable to the tyre." '110
patent col. 5 l. 13. It also states "[a]dditional hose 83 . . .

enables compressor assembly 2 to be used quickly and easily to inflate a flat tyre," a function consistent with connection to the tire. *Id.* col. 5 ll. 29–31. Figure 7 shows hose 83 as external to the device, and the end of hose 83 appears to be connectable to a tire valve. *Compare* '110 patent fig.7 *with* '110 patent fig.4 (illustrating hose 5, which the specification indicates is connected to a tire valve); *see id.* col. 2 ll. 47–48.

The district court did not find these statements in the specification to be controlling because they "merely describe[] Figure 7 [which is] . . . a preferred . . . embodiment." Order Re TEK's Motions for Summary Judgment of Damages and Invalidity at 8 (internal quotation marks and citation omitted). Such reasoning requires this court to consider two general principles that are often in some tension with one another. On the one hand, the patentee is generally "entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) (citing *Phillips*, 415 F.3d at 1323); *see also Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1350 (Fed. Cir. 2013). Indeed, "[t]his court has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

On the other hand, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a [PHOSITA]," and the PHOSITA "is deemed to read the claim term . . . in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. Indeed, the specification is "the single best guide to the meaning of a disputed term." *Id.* at 1315, 1321 (internal quotation marks and citation omitted).

This court has "recognize[d] that the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." *Id.* at 1323.

In this case, neither Sealant/AMI nor the district court point to any language in the specification describing the "additional hose 83" as sometimes not connectable to a tire. *See* Plaintiffs-Cross-Appellants' Br. ("Sealant Br.") 52–56; Order Re TEK's Motions for Summary Judgment of Damages and Invalidity at 6–8. There is simply no guidance or indication whatsoever of how the additional hose might "cooperate with" a tire, except as provided by the preferred embodiment. *See Phillips*, 415 F.3d at 1321 (Adoption of "a dictionary definition entirely divorced from the context of the written description" is improper.). The meaning of "cooperate with" is therefore sufficiently "amorphous that one of skill in the art can only reconcile the claim language with the inventor's disclosure by recourse to the specification." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (distinguishing between amorphous claim terms and those that are "clear and well-defined").

Sealant and AMI argue the district court's construction is correct because "the ordinary meaning of 'cooperating with' means 'working together, directly or indirectly.'" Sealant Br. 52–53. However, if such a dictionary definition of "cooperating with" were adopted, as Sealant and AMI propose, the patent would claim more than the patentee actually invented. *See Smith v. Snow*, 294 U.S. 1, 14 (1935) ("[I]f the claim were fairly susceptible of two constructions, that should be adopted which will secure to the patentee his actual invention, rather than to adopt a construction fatal to the grant."). There is nothing in the patent indicating the patentee conceived of how the hose might "cooperate with" an inflatable article other than by

connecting to it directly as a conduit for air. *See* '110 patent col. 5 l. 31 (The additional hose can be "used quickly and easily to inflate a flat tyre."). More generally, this court has cautioned against "elevating the dictionary" to excessive prominence. *Phillips*, 415 F.3d at 1321.

For these reasons, the "cooperating with" limitation is properly construed as requiring direct connection to the tire, and the district court erred in finding otherwise.

III. The District Court Erred in Granting Summary Judgment that the '110 Patent Would Have Been Obvious

A patent is obvious and therefore invalid if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103 (2006).[1] Obviousness is a question of law based on (1) the scope and content of the prior art, (2) the differences between the claims and prior art, (3) the level of ordinary skill in the pertinent art, and (4) objective indicia of nonobviousness. *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966).

A. The District Court Clearly Erred in Evaluating the Scope and Content of the Prior Art

"The content of prior art presents an issue of fact that this court reviews only for clear error." *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1335 (Fed.

---

[1] Section 103 has since been amended. *See* Leahy Smith America Invents Act, Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 287–88 (2011) ("AIA"). However, because the application that led to the '110 patent was filed before March 16, 2013, the pre-AIA § 103(a) applies. *See* AIA, 125 Stat. at 293.

Cir. 2004).  Two prior art references, U.S. Patent Application Publication 2003/0056851 ("Eriksen") and Japanese Patent No. 2004-338158 ("Bridgestone"), were considered by the district court.  TEK conceded "Eriksen disclose[s] all the elements within claim[s] 1, 26 and 27 of the '110 Patent except 'a three-way valve' and 'an additional hose.'"  Order Re TEK's Motions for Summary Judgment of Damages and Invalidity at 7.  The district court found Bridgestone, which was not before the examiner, discloses an air tube 54 that works together with a tire, even though it is not directly connected to the tire, and that air tube 54 therefore represents the element of "an additional hose 83 cooperating with" the tire.  *See id.* at 9.



Bridgestone fig.1.



Fig.7

'110 patent fig.7.

Under the proper construction of "cooperating with," however, Bridgestone does not disclose an "additional hose cooperating with" the tire because air tube 54 is not directly connected to the tire as is additional hose 83 in the '110 patent (see figures, above). Air tube 54 also cannot, without joint hose 66, "be used quickly and easily to inflate a flat tyre," *id.* col. 5 ll. 29–31, because only joint hose 66 is connected to the tire in Bridgestone. *See* Bridgestone fig.1. In light of these differences, the district court clearly erred in finding Bridgestone disclosed the element of an "additional hose [] cooperating with" the tire.

### B. There Was Insufficient Evidence of a Motivation to Combine Eriksen with Bridgestone to Produce the Claimed Invention

The motivation to combine prior-art references is a question of fact, reviewable only for clear error. *See Grp. One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1304 (Fed. Cir. 2005). The district court found a motivation to combine Eriksen and Bridgestone, noting "both Eriksen and Bridgestone offer nearly identical solutions," to "the same problem" of "repairing deflated tires with air and/or

sealing liquids." Order Re TEK's Motions for Summary Judgment of Damages and Invalidity at 10 (citing *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1371 (Fed. Cir. 2011) (This court has "consistently stated that courts may find a motivation to combine prior art references in the nature of the problem to be solved, and that [t]his form of motivation to combine evidence is particularly relevant with simpler mechanical technologies.") (internal quotation marks and citation omitted)).

Based on its erroneous interpretation of claim scope, the district court erred in determining that Sealant and AMI "'demonstrate[d] by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching[s] of [Eriksen and Bridgestone] *to achieve the claimed invention.*'" Order Granting Post-Trial Motions at 23 (quoting *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068–69 (Fed. Cir. 2012)) (emphasis added). Even if a skilled artisan would be motivated to combine the two references, as the district court found, this would not produce the claimed invention because neither Bridgestone nor Eriksen teach the use of "an additional hose [] cooperating with" the tire.

For these reasons, the district court erred in granting summary judgment that the asserted claims of the '110 patent would have been obvious. While we reverse the district court's grant of summary judgment of obviousness with respect to the asserted claims of the '110 patent, Sealant has not had an opportunity to make a case for invalidity in light of this court's claim construction. A remand is therefore required.

### IV. The '581 Patent Is Invalid and the District Court Erred in Denying Judgment as a Matter of Law

When reviewing a denial of JMOL, this court applies the standard of review according to the law of the regional

circuit, in this case the Ninth Circuit. *See Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1290 (Fed. Cir. 2007). The Ninth Circuit "reviews de novo an order granting or denying JMOL," and will reverse a denial of JMOL where "'the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Id.* at 1291 (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

Sealant and AMI argue substantial evidence supports the jury's finding that TEK failed to prove the prior art disclosed both the receptacle and port of independent claim 27. Sealant Br. 17–18. Claim 27 of the '581 patent recites:

> A tire repair device, comprising:
>
> a housing;
>
> an air compressor disposed within said housing;
>
> an air flow path from said air compressor adapted to be connected to a tire;
>
> a *receptacle formed in said housing* in communication with said air flow path;
>
> and a *port disposed in said receptacle* in communication with said air flow path adapted to sealingly receive a bottle of tire sealant,
>
> wherein when said air compressor is activated and a bottle of tire sealant is received in said receptacle, air from said air compressor is forced into the bottle and pushes tire sealant out of the bottle, into said receptacle, into said air flow path, and into the tire.

'581 patent col. 9 l. 58–col. 10 l. 5 (emphases added).

The specification indicates port 40 (fig.3) is located at the base of cap 48 (figs.1 & 3) in receptacle 14 (fig.1). *See*

'581 patent figs.1, 3.  Figure 5, reproduced below, illustrates "a sectional view of the receptacle port of [Figure 3]."  *Id.* col. 3 ll. 63–64.



FIG. 1

FIG. 3

FIG. 5

'581 patent figs.1, 3, 5.

U.S. Patent Application Publication 2004/0173282 A1 (the "'282 publication") discloses both the receptacle and port elements of claim 27 of the '581 patent.  *See* '581 patent col. 9 ll. 63–67.  Figure 4 of the '282 publication illustrates "screw socket 18," '282 publication ¶ 18 (*see* J.A. 2363, 2365), into which the "container [of sealant] 4" is inserted, *id.* ¶¶ 15, 18.  The "screw socket" of the '282 publication is a "port" within the meaning of the '282 patent.  *See Sealant Sys. Int'l, Inc. v. TEK Global, S.R.L.*, No 11-cv-0074-PSG, at 10–12 (N.D. Cal. Aug. 29, 2012) ("Claim Construction Order") (J.A. 25.1–25.31).  AMI's

expert Dr. King conceded this during trial, stating "socket 18 . . . meets the court's definition of a port in the claim construction order." J.A. 4381; *see also id.* (Question: "You just testified screw socket 18 is a port . . . ." Answer: "That's correct."). The port of claim 27 of the '581 patent is therefore disclosed in the form of screw socket 18 of the '282 publication.



'282 publication fig.4.

However, Dr. King opined screw socket 18 does not meet the requirements of the claim element because it is not disposed in a receptacle. J.A. 4381. He stated the '282 publication did not disclose a receptacle "because there's not a wall [around the port]," i.e., around screw socket 18. J.A. 4384. However, claim 27 does not recite a "wall," and the district court construed "receptacle formed in said housing" according to its ordinary meaning. Claim Construction Order at 7. The district court explained that "[t]he word 'receptacle' connotes depth" and a PHOSITA would understand the term to mean "something that receives or contains something." *Id.* No reasonable juror could conclude that the unnumbered hole in the housing in Figure 4 of the '282 publication, which contains the screw socket, does not possess depth. *See* J.A. 4385 (Dr. King: "[The '282 publication] has a hole that the socket

goes in."). This indicates the '282 publication discloses both the port and the receptacle as claimed in the '581 patent. *See Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1381 (Fed. Cir. 2009) ("[T]he conclusion of anticipation is dictated by the testimony of [the patent owner's] own witnesses and the documentary evidence that was presented to the jury.").

The district court, however, found "a genuine dispute exists whether [the '282 publication] discloses 'a receptacle formed in the housing,'" as required by claim 27 of the '581 patent, citing the argument of Sealant and AMI that "the hole in the housing [of the '282 publication] does not perform the function of sealingly receiving the container of sealant," and that "only the screw socket identified as 18 does." Order Re TEK's Motions for Summary Judgment of Damages and Invalidity at 20–21 (capitalization omitted). However, claim 27 states "a *port* disposed in said receptacle . . . [is] adapted to sealingly receive a bottle of tire sealant." '581 patent col. 9 ll. 65–66 (emphasis added). Claim 27 does not require the *receptacle* to sealingly receive the bottle of sealant, except to the extent the port, which is in the receptacle, does so. *See id.* col. 9 l. 63–col. 10 l. 5.

Because claim 27 of the '581 patent is anticipated by the '282 publication, the district court's finding of no anticipation is reversed and the jury's infringement verdict and damages award, as well as the district court's order permanently enjoining TEK from infringing the '581 patent, are vacated.[2]

With one exception, Sealant and AMI do not separately argue the validity of claims other than claim 27, so this

---

[2]     Because we vacate the jury's damages award, the parties' dispute over how the award was calculated is moot.

court will not separately consider them.  *See Sud-Chemie, Inc. v. Multisorb Techs., Inc.*, 554 F.3d 1001, 1009 (Fed. Cir. 2009) (declining to consider the independent validity of certain claims where the appellant did not separately argue they were patentable).  The one exception is claim 42, which recites:

> A tire repair device, comprising:
>
> a housing;
>
> an air compressor within said housing;
>
> an air flow path from said air compressor adapted to be connected to a tire; and
>
> *a reservoir formed in said housing* in communication with said air flow path adapted to receive tire sealant,
>
> wherein when said air compressor is activated and tire sealant is received in said reservoir, air from said air compressor is forced into said reservoir and pushes tire sealant out of said reservoir, into said air flow path, and into the tire.

'581 patent col. 11 ll. 29–41 (emphasis added).  When asked "[w]hat difference, if any, existed between the claimed invention [of the '581 patent] and the prior art," the jury stated only "[t]he two piece system (receptacle and port)." J.A. 28.  Claim 42 recites neither a receptacle nor a port.  *See* '581 patent col. 11 ll. 29–41.

Nevertheless, the district court denied TEK's motion for JMOL that claim 42 was anticipated, reasoning that "testimony from both parties' experts [that none of the prior art disclosed a reservoir] constitutes substantial evidence supporting the jury's verdict on anticipation." Order Re TEK's Motions for Summary Judgment of Damages and Invalidity at 23.  However, in light of the expert testimony and the disclosure of the '282 publica-

tion, no reasonable juror could conclude the '282 publication fails to disclose a reservoir.

The district court construed "reservoir" to mean "cavity where sealant collects separate from the container." Claim Construction Order at 12. The '282 publication discloses "a cavity 25 . . . from where the air passes between the inner walls of the cavity 25 and the outer walls of the connector pipe 19 down to the continuation of the compressed air duct 21." '282 publication ¶ 19. *See* J.A. 4099 (Dr. Kazerooni: "Once you put a cap in there, there's a cavity."). As described in the '581 patent, a user can "pour[] tire sealant into reservoir 215, replace[] the cap on orifice 214, and activate[] switch 18 to turn on the air compressor." '581 patent col. 7 ll. 36–38. Nothing in the record suggests the cavity of the '282 publication could not receive sealant in a similar manner, such as by applying sealant to the inside of the cap prior to inserting it into the socket. Figure 3 (below) illustrates cavity 25, which includes the triangular region between connector pipe 19 and plug 22 as well as the space between the inner walls of plug 22 and the outer walls of the connector pipe 19.



'282 publication fig.3.

Although the cavity disclosed in the '282 publication may be small, AMI's expert Dr. King indicated there is no minimum size for the cavity in order for it to constitute a reservoir. *See* J.A. 4345 (agreeing that "even one milliliter [of sealant flowing out of the container] would be a sufficient amount to have a reservoir"). The '282 publication therefore anticipates claim 42 of the '581 patent. The district court's denial of JMOL as to claim 42 is thus also reversed, and the jury's infringement verdict and damages award, and the district courts' injunction as to claim 42, are also vacated.

## V.   Sealant and AMI's Request for Attorney Fees Is Denied

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Applying this court's precedent in *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005), the district court denied Sealant and AMI's motion for attorney fees.

Sealant and AMI argue the district court's denial of its motion for attorney fees should be vacated and remanded because the Supreme Court's intervening decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), has rendered the standard applied by the district court no longer valid. The Court in *Octane Fitness* "reject[ed] the Federal Circuit's requirement that patent litigants establish their entitlement to fees under § 285 by clear and convincing evidence," thereby overruling *Brooks Furniture*. *Octane Fitness*, 134 S. Ct. at 1758. It also rejected this court's requirement that a case may be deemed exceptional under § 285 only "when there has been some material inappropriate conduct, or when the litigation is both brought in subjective bad faith and objectively baseless." *Id.* at 1752 (internal quotation marks and citation omitted).

However, *Octane Fitness* did not alter the requirement that attorney fees may be awarded "to the prevailing party." 35 U.S.C. § 285. Because this court holds AMI's '581 patent invalid, and reverses summary judgment of invalidity with respect to TEK's '110 patent, Sealant and AMI are no longer "prevailing parties" for purposes of § 285. *See SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1086 (Fed. Cir. 2014) ("To be the prevailing party, we require: (1) that the party received at least some relief on the merits, and (2) [t]hat relief must materially alter the legal relationship between the parties by modifying one party's behavior in a way that directly benefits the opposing party.") (internal quotation marks and citation omitted). The district court's denial of Sealant's attorney fees request, predicated on the now vacated judgment, is therefore affirmed.

CONCLUSION

For these reasons, the decision of the district court is

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED FOR FURTHER PROCEEDINGS**